**Doris A. TAYLOR, Appellant,**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare, Appellee.**

No. 74–1570.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1974.

Decided March 17, 1975.

---

Dennis M. Sweeney, Baltimore, Md., for appellant.

James E. Anderson, Asst. U. S. Atty. (George Beall, U. S. Atty., on brief) for appellee.

Before WINTER, CRAVEN and RUSSELL, Circuit Judges.

CRAVEN, Circuit Judge:

This is an appeal under 42 U.S.C. § 405(g) (1970) from the denial of Social Security disability benefits. The adverse decision of the examiner, after a hearing, was affirmed by the appeals council; the district court granted the Secretary's motion for summary judgment. The question presented on appeal is whether the Secretary, upon the claimant's prima facie showing of disability, satisfied his then-created burden of going forward with proof of the claimant's vocational capacity to perform other jobs. Finding no substantial evidence in the record to support the asserted vocational capacity, we reverse and remand with direction to enter judgment for Mrs. Taylor.

I.

It is not disputed that Mrs. Taylor presented a prima facie case of disability. Her prior customary occupation was that of clothes presser in a laundry. In November 1969 the lower portion of her left lung was removed. Subsequent medical history indicates diagnosis and treatment of diabetes, chronic bronchitis, thyroid condition, and arteriosclerotic heart disease with accompanying symptoms of shortness of breath and weakness and pain in the left side and limbs. Since the clothes presser job required her to stand, walk, and stoop all day, with the attendant extremes of temperature and dampness, a return thereto was foreclosed.

As the lower court correctly ruled, this prima facie case of disability to perform her customary occupation due to a medical condition shifted the burden of going forward from her to the Secretary. Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968); Hernandez v. Weinberger, 493 F.2d 1120 (1st Cir. 1974); Meneses v. Secretary of H.E.W., 143 U.S. App.D.C. 81, 442 F.2d 803 (1971).

The Secretary's burden under the statute, 42 U.S.C. § 423(d)(2)(A), is two-fold: (1) the claimant, given his age, education, and work experience, has the capacity to perform a specific job (2) which exists in the national economy. Garrett v. Richardson, 471 F.2d 598 (8th Cir. 1972). Addressing himself to the former—the only one at issue here—the Secretary identifies three possible sources of the substantial evidence needed to sustain his finding that Mrs. Taylor was capable of performing either as a keypunch or telephone operator, and therefore was not disabled. We find none of them persuasive.

Principal support was sought from the opinion of Dr. Antlitz, a specialist in cardiovascular diseases, who examined Mrs. Taylor in November 1972 at the request of the appeals council. His report, *inter alia*, stated:

> The patient may be limited by the various disease states and post operative condition but does not appear to be completely disabled. She should be able to perform light and sedentary type work activity.[1]

Additionally, hospital out-patient records indicated a recommendation for vocational rehabilitation.[2]

---

1. Dr. Antlitz also set out a "work prescription":

   Stand/Sit: No restriction.

   Walk: 2 to 4 blocks 3 to 4 times a day.

   Lift/Carry: 20 to 25 lbs. 2 to 3 times an hour.

   Push/Pull: 25 to 30 lbs. 2 to 3 times an hour.

   Manipulate fingers and arms: No restriction (left side needs physical therapy to strengthen).

   Climb Stairs: 1 to 2 flights 3 to 4 times a day.

   Public Transportation: No restriction.

   The patient would benefit from vocational rehabilitation.

2. A March 17, 1971, entry: "Will arrange appt. [with] Vocational rehab counsellor for job placement"; April 14, 1971: "Will see Vocat Rehab. on 4/20 to see about job. She

Citing the foregoing, the lower court concluded that the following finding and conclusion of the appeals council was supported by substantial evidence:

4. The claimant, who is 41 years old and has an 11th-grade education, retains the ability to sit, stand, walk about and to use her arms and hands in light and sedentary occupations, such as keypunch operator and telephone operator. These occupations exist in significant numbers in the area where she resides.

Mrs. Taylor readily agreed with the use of a physician's expertise to establish her *physical* ability to perform "light and sedentary" work in general. Error is claimed, however, in the further finding that she possessed the specific skills to perform as a keypunch or telephone operator.

■ The proposition that the Secretary may establish a specific vocational ability solely through medical evidence has been soundly rejected. We find the

Seventh Circuit's language highly persuasive on this point.

While the conclusions of a physician are probative with respect to a claimant's physical symptoms, they cannot alone support a finding of employability. A physician can adequately offer his expertise, as this one did, to show that a claimant is *physically* able to perform "substantial gainful" employment. But, other factors, extraneous to a physical diagnosis, enter into an evaluation of a claimant's ability to work.

Orzel v. Finch, 445 F.2d 150, 154 (7th Cir. 1971) (emphasis in original); *accord,* Hernandez v. Weinberger, *supra,* Garrett v. Richardson, *supra.*

■ Anticipating, perhaps, our agreement with *Orzel,* the Secretary asserts that his finding of employability rests on independent vocational evidence, namely, that Mrs. Taylor had received "some" training as a keypunch operator. We are referred to Mrs. Taylor's testimony before the hearing examiner in May 1972, set out in the margin.[3] But her

should be working to have a structured day—I believe this would help her diabetes by keeping her out of the kitchen & refrigerator."

3. Q. Now, since 1969 have you gone back to work anywhere?
A. No.
Q. And why is that?
A. Because I haven't been able to work.
Q. Have you checked with the Vocational Rehabilitation people to see if they could help you?
A. Yes, I went to Rehabilitation at Sinai for three weeks.
Q. What did they say?
A. They sent me down to the Maryland Training Center.
Q. And what happened?
A. I'm still going. I haven't finished the course. The days that they assigned for me to come to school, most of those days I have to be in at the clinic and then I went in the hospital for those eight days and then I came out and being home for two weeks and then back into school again.
Q. All right. What is Maryland Training Center training you to do?
A. Key punch.
Q. How long have you been doing that?

A. November.
Q. Since November of '71? How do you like it?
A. I don't.
Q. Don't care for it?
A. No, I don't.
Q. Why don't you like that?
A. I find it very difficult to do. I just can't seem to get my fingers to operate the keys, you know.
Q. How long would the course have normally lasted if you hadn't been going to the clinic?
A. They say six weeks, but you can't do it in six weeks.

Q. Do you feel like you are going to be able to get back to work, such as a presser?
A. No.
Q. Why?
A. Definitely not because I tried it before. I can't stand the fumes, I can't stand the steam and it hurts me in my chest, causes my eyes to run, it causes me to cough a lot.
Q. How about work as a custodian?
A. I wouldn't be able to do that because of the mopping and with the buffer. It would be too much of a strain for my left side.

statements run counter to the Secretary's finding: she found keypunching "very difficult to do" and, after six months, had not yet finished the six-week course, although she was "working at it." In any case, her testimony hardly supplies the quantum of evidence necessary to show actual vocational skill.[4] Similarly inconclusive testimony by a claimant, a laundry presser, concerning her brief stint during pregnancy with the laundry's darning and weaving machine "in no way" satisfied the Secretary's burden in Hernandez v. Weinberger, *supra*, 493 F.2d at 1123.

■ A third source is advanced by the Secretary to supply the needed proof of employability: he may administratively "notice" that Mrs. Taylor possesses the *specific* vocational capacity for the jobs of keypunch and telephone operator. But while this and other circuits have agreed that the Secretary may administratively notice the *existence* of such jobs in the economy,[5] facts pertaining to the capacity of a specific individual can be supplied only by particularized proof. *See* Hernandez v. Weinberger, *supra*; 2 K. Davis, Administrative Law § 15.03 at 353 and § 15.10 at 403 (1958). To allow the Secretary to "notice" a fact that is both complex and disputed would undermine an explicit congressional direction to adjudicate disability claims on an individual case-by-case basis.[6]

It is clear that the Secretary's finding of vocational capacity is supported nei-ther by substantial evidence in the record nor by any facts susceptible of administrative notice. The entry of summary judgment in his favor must therefore be vacated.

## II.

■ Addressing the question of remand, the Secretary urges that we not end the litigation but instead allow another administrative hearing. It is suggested that if there were a flaw in the proceedings below it consisted simply of an understandable failure on the part of the hearing examiner to call a vocational expert as a witness. The unstated assumption seems to be that any such expert will, of course, testify that Mrs. Taylor possesses the necessary skill to work as a keypunch operator and telephone operator. The assumption seems doubtful in the present state of the record. Taylor has tried for six months to complete a six-week course of training as a keypunch operator and has been unsuccessful. As for the job of a telephone operator there is both the unresolved question of her capacity to do it and testimony that such jobs are not available in the national economy for persons who wish to begin at her age. Thus we do not view this case as one that turns upon an inadvertent procedural or technical flaw in the administrative process that reasonably ought to be subject to correction. Instead, it seems to us that we are asked to allow the Secretary to start over again in his determination to deny benefits to Mrs. Taylor.

---

Q. Then you actually don't feel that the key punch is going to be a successful thing for you to do?
A. I don't know. I'm working at it.
Appendix at 60–61, 63.

**4.** Q. If you had your choice as to what you'd like to go back to, what would you do?
A. I'd like to try for PBX operator.
Q. Will they train you for that?
A. I don't know.
Q. Have you asked them about it?
A. Yes.
Q. What did they say?
A. They didn't say anything about it. They suggested key punching.
Q. How about like the telephone company? Have you checked with them to see if they would have anything of that nature for you?
A. They are only accepting applicants that are from age 18 to 25.
Appendix at 64.

**5.** *E. g.,* Reynolds v. Richardson, No. 71–2031, CCH Unemploy. Ins. Rep., Fed. ¶ 16,842 (4th Cir. 1972); Chavies v. Finch, 443 F.2d 356 (9th Cir. 1971).

**6.** Section 423(d)(2)(A) directs that in determining disability to "engage in any other kind of substantial gainful work," the Secretary must consider the *claimant's* age, education, and work experience.

Nor are we favorably impressed with the Secretary's argument that another hearing should be allowed because "the Appeals Council and the administrative law judge in coming to their conclusion relied on existing law and administrative procedures." Our decision today is not new. It has long been settled that the burden of rebutting prima facie disability shifts to the Secretary [7] and that he may sustain that burden only by substantial evidence of alternate employability.[8] Indeed the case law rests firmly upon the language of the statute: "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . .." § 405(g). Moreover, internal departmental regulations themselves put the hearing examiners and appeals council on notice that to proceed in a case such as this one without specific evidence of alternate employability, as might be given by a vocational expert, is to invite reversal.[9]

We have recently noted that § 405(g) "authorizes us to reverse the Secretary's decision 'with or without remanding the cause for a rehearing.'" Breeden v. Weinberger, 493 F.2d 1002, 1011–12 (4th Cir. 1974). The statute itself contemplates remand for additional evidence only "on good cause shown." § 405(g). We think the Secretary has not shown sufficient good cause to prolong the litigation.

On remand the district court will enter a judgment in Mrs. Taylor's favor granting her disability benefits from November 29, 1969.

Reversed and remanded.

7. *E. g.*, Hicks v. Gardner, *supra.*

8. *See, e. g.*, Meneses v. Secretary of H.E.W., *supra,* 442 F.2d at 807 and cases cited at n. 11. *See also* Annot. 22 A.L.R.3d 440 (1968) and 1974 Supp.

9. Handbook, Social Security Administration, Bureau of Hearings and Appeals, Part I, § 87 (1967). Section 1–87–10, in pertinent part, provides:

During the prehearing study of a disability case, including tentative selection of the proposed exhibits, the hearing examiner should determine if vocational testimony appears desirable or even essential in order to reach a proper conclusion. *In determining whether a vocational expert should be called, the hearing examiner should be mindful that if the preponderance of the credible evidence of record, including medical, creates a significant doubt that a claimant cannot do his usual work or jobs closely associated therewith, under certain circumstances the burden of proceeding, i. e., going forward with the evidence, shifts to the Department.*

In making this determination, the hearing examiner must consider the following:

(2) the specific record requirements of *local judicial precedents,* e. g., the necessity for affirmative vocational evidence for proper adjuciation (§ 1–87–10B), and the sufficiency of vocational evidence in the claim file (§ 1–87–10F);