Willie Lee FOSTER, Plaintiff,

v.

David MATHEWS, Secretary of Health, Education and Welfare, Defendant.

No. C–C–75–301.

United States District Court, W. D. North Carolina, Charlotte Division.

Dec. 3, 1976.

Donald S. Gillespie, Jr., Legal Aid Society of Mecklenburg County, North Carolina, Charlotte, N. C., for plaintiff.

Douglas M. Martin, Asst. U.S. Atty., Charlotte, N. C., for defendant.

McMILLAN, District Judge.

Willie Lee Foster, the plaintiff, brought this suit to review a final decision of the Secretary of Health, Education and Welfare, which denied him Social Security benefits for the period from January, 1972, to November 21, 1974.

A chronological study of plaintiff's disabilities and claims is necessary to understand the case.

Foster is an unskilled black laborer, born in 1930. He lives in Lincoln County, North

Carolina. He has a wife and two stepchildren. His education stopped at the tenth grade. There is no evidence as to the extent of his literacy beyond the fact that he apparently signs his name to various papers. An examiner who interviewed him in September, 1973, said that he "responded very slowly to question [sic] and had poor comprehension."

Foster served in the United States Army from 1951 to 1953.

In 1955 Foster developed back pain and was examined and treated at the Veterans Administration Hospital at Oteen, North Carolina. He was found to have scoliosis (curvature) of the lumbar spine. The curvature was described as being "several inches" in nature. Neurological signs included positive straight leg raising tests. There was narrowing of intervertebral discs in the lumbar area and evidence of inflammation and of muscle spasm. He was fitted with a lumbo-sacral brace, and discharged improved.

Again in 1964 Foster was admitted to the Veterans' Hospital at Oteen, where a diagnosis of far advanced and active pulmonary tuberculosis was made. He was treated for tuberculosis throughout 1964 and 1965 in the hospital and at home. Examinations were made of his spine and revealed considerable destruction of the intervertebral discs at the lumbar level, considerable destruction of the bodies of the second and third lumbar vertebrae, and calcification of ligaments and other adjacent structures. In 1965 these findings were more advanced; the fusion of the fourth and fifth lumbar vertebrae had become complete and the tuberculosis diagnosis was extended to include tuberculosis of the entire lumbar spine. He was found unable to do any weight lifting.

Between 1964 and 1969 Foster did some work at a textile mill, but there is no complete work history available. The tuberculosis symptoms and findings continued active through Veterans Administration examinations in 1966 and 1969.

On June 15, 1969, Foster was involved in an automobile accident in which he sustained injuries including a compound fracture of the right femur or hip bone, and compound comminuted fractures of both bones of his right lower leg. An intramedullary nail was inserted to stabilize the fractured femur. The compound comminuted fractures of the lower leg required extensive treatment. The doctor, many months later, predicted that "his disability will be prolonged." In April of 1970 the fracture of the tibia, the larger of the bones of the lower leg, had not healed, and the right knee had become stiff. Numerous surgical procedures were required. These included insertion of nails in the tibia and bone grafting and other procedures. As late as April, 1971, he was still using crutches, and union of the bones of the lower leg was still in question. Plaintiff was instructed not to return to work until the fracture had solidly united.

In March of 1970 Foster filed an application for disability benefits, and in May of 1970 a disability determination was made authorizing benefits for the period beginning June 15, 1969. Benefits were paid under that award until near the end of January, 1972, and were then discontinued.

The circumstances of the discontinuance have never been adequately investigated and the plaintiff has never been heard on that subject. The administrative record shows that a disability examiner filed a report on February 10, 1972, reading as follows:

"Disability established 6–15–69 due to fracture of right tibia and fibula and femur. He indicates that he has done no work. He was asked to keep a consultative examination appointment to determine his continuing eligibility for benefits. He failed to reply to this letter, but on being called, agreed to keep the appointment. He failed to keep this appointment. His wife said he failed to keep the appointment because he thought it was next week. He definitely agreed to keep the second appointment. An appointment was made but he failed to reply to this letter. A further telephone conversation with his wife indicated that he would keep the appointment. How-

ever, he failed to keep this second appointment. Personal contact with the wage earner by the District Office indicated the reason he had not been to the consultative examinations was because he could not find the doctor's office. Although he walked with a slight limp, he appeared to be physically and mentally competent and therefore able to keep the appointment.

"Evidence shows that this wage earner has failed to cooperate with State Agency in obtaining a consultative examination to determine his continuing eligibility for disability benefits, although evidence shows that he was physically and mentally able to do so. Therefore, *disability ceases effective 11–71 due to failure to cooperate.*" (R. p. 28) (Emphasis added.)

Foster, after his payments were discontinued, filed an application (R. pp. 29–32) for further benefits. This application was received on July 16, 1973. The disability was described as "crushed right leg that has never been restored." The application said plaintiff was able to go outside, but only with the help of crutches.

Without hearing or explanation the application was denied in a routine form letter, the only items of which personal to the plaintiff were his name and address and the date when he last met the earnings requirement for disability purposes (March 31, 1975).

Foster filed a request for reconsideration, stating (R. p. 36) that "I can't work and feel that I am disabled enough to get social security." This claim was denied, again without a hearing, on February 15, 1974 (R. p. 39). The disability examiner (R. p. 60) apparently wrote a letter on October 8, 1973, and made a telephone call on October 24, 1973, and an order was entered on February 12, 1974, denying the claim again.

The examiner's order reads as follows:

"The findings of fact and conclusions contained in the determination of 8/30/73 except as herein modified is hereby incorporated by reference, but not the inferences, findings or conclusions thereon.

"Special letter—10/8/73

"Telephone Contact—10/24/73

"Evidence shows that the wage earner alleges disability since 1969 due to multiple fractures. On reconsideration level, numerous attempts were made to secure current medical evidence. The wage earner was instructed that it was his responsibility to furnish medical evidence and if this evidence was not submitted within a specified length of time, his claim would be processed based on the evidence in his file. As no evidence was received and as evidence in the file does not show an impairment of disabling severity, the wage earner cannot be found under a disability."

Thereafter, Foster appealed to an administrative law judge, requesting a hearing (R. p. 6). The decision of the administrative law judge appears at pages 8 through 14 of the record. Foster did not appear for the hearing. However, in response to a hearing notice received on January 28, 1975, he wrote immediately telling the administrative law judge:

"Your notice of January 22, 1975 received this date informing me that a hearing had been set for January 22, 1975, regarding my claim.

"I have been a patient at the Veterans Administration Hospital since November 22, 1974 and remain hospitalized. Any questions you may have at this time regarding my illnesses may be directed to this hospital."

The examiner treated Foster's letter as a request for a decision without a hearing. He went to considerable pains reviewing the available record, but did not schedule another hearing nor conduct another hearing. He concluded that Foster had been entitled to disability payments for the period from the June 15, 1969 leg injury, through November, 1971, and from November 21, 1974 and thereafter, but that he was not entitled to compensation for any period prior to November 21, 1974. The administrative law judge's ruling was upheld by the Appeals Council on July 28, 1975.

Meanwhile, the medical record was supplemented by further information. Plaintiff was readmitted to Oteen on November 22, 1974, with a flare-up of his tuberculosis symptoms (spitting blood). His pulmonary tuberculosis was found to be active and chemotherapy was resumed. The tuberculosis of the spine was again noted; he still had "deformity of right leg with foot drop secondary to fracture of femur and both bones of leg." The prognosis was "guarded." His spinal X–rays on November 25, 1974, showed the following:

"Nov. 25, 1974: Two views of thoracic spine reveal just minimal degenerative osteophytosis in lower thoracic spine at the level of thorocolumbar junction. The thoracic spine is otherwise unremarkable except for very mild scoliosis toward the right in midportion.

"Two views of lumbosacral spine reveal a fusion of L–4 and L–5 vertebral bodies and severe narrowing of disc space between L–2 and L–3, which is associated with tremendous paravertebral calcification. Sclerotic bone is identified in the region of two vertebral bodies, adjacent to L–2—L–3 disc interspace. Some sclerotic reaction is identified in region of fused L–4 and L–5 segments. In addition, there is paravertebral calcification on the right side at the level of L–2—L–3.

"Above this area there is degenerative osteophytosis with complete bridging of intervertebral disc space. A similar thing is identified at the level of L–5—S–1 disc interspace. The findings are compatible with an old TB.

"Two views of right upper leg reveal intramedullary nail extending throughout the femur.

"Two views of right lower leg reveal old, well healed fractures of lower shaft of right tibia and fibula with some bony irregularity in distal tibia, compatible with an old surgical procedure and internal fixation devices placement for traction. I see no evidence of acute disease, but bony structures are slightly demineralized and osteoporotic.

"ADDENDUM: AP view of lumbar spine is reviewed instead of KUB. I can see a small calcific density overlying the shadow of left kidney. This is in all likelihood, created by kidney stone."

This suit challenges the denial of benefits for the period from January, 1972, to November 21, 1974.

Plaintiff's counsel has asserted (although no record on the point was made) that Foster had three leg operations in 1975–6 and still uses a crutch and a cane, and is still disabled.

It is perfectly obvious to any rational mind that this man's disability, which existed in 1971, did not vanish just because he failed to show up for a hearing or a medical appointment, and then reappear when he was again seen by the doctors in 1974. Tuberculosis progresses in fits and starts, and has obviously progressed in this man's case and gotten worse instead of better. His leg has lost bony substance and has never completely healed. Bony arthritis once established does not go away. Shrunken spinal discs once degenerated cannot restore themselves. Spinal tuberculosis once established in the spine may become quiescent but the scars can remain to disable.

The condition of back and leg so graphically demonstrated in the pre-1972 reports obviously continued and apparently got worse after disability payments were stopped in 1972.

■ There is no basis in fact for the conclusion of the administrative law judge that there was no disability simply because the plaintiff failed to keep a medical appointment, nor for the conclusion that there was no disability in the period from January, 1972, until November, 1974.

■ The Secretary's decision to discontinue benefits as a temporary matter might be justifiable as an interim measure to pry cooperation from an ignorant or uncooperative claimant. However, the decision to discontinue is not like the law of the Medes and the Persians, incapable of change despite good cause shown. It can be reopened

upon any and all of the grounds set out in 20 C.F.R. 404.957 as follows:

"An initial, revised, or reconsidered determination of the Administration or a decision or revised decision of a hearing examiner or of the Appeals Council which is otherwise final . . . may be reopened:

. . . . .

"(b) After such 12-month period (from the date of the notice of the initial determination), but within 4 years after the date of notice of the initial determination . . ., upon a finding of good cause for reopening such determination or decision, or

"(c) At any time when:

. . . . .

"(8) Such initial, revised, or reconsidered determination or decision or revised decision is unfavorable, in whole or in part, to the party thereto but only for the purpose of correcting clerical error or error on the face of the evidence on which such determination of decision was based." 20 C.F.R. 404.957.

"Good cause" as defined in 20 C.F.R. 404.-958, is deemed to exist where:

"(a) New and material evidence is furnished after notice to the party to the initial determination; (or)

. . . . .

"(c) There is an error as to such determination or decision on the face of the evidence on which such determination or decision is based."

Nobody has heard the witnesses testify on the 1972–74 disability, and the hearing examiner and the administrative law judge are in no better position to weigh the evidence on record than is a court sitting in review.

The evidence of the plaintiff's original illness, injury and disability demonstrates so compellingly the nature and permanence of those disabilities and illnesses that it is irrational to presume or find without proof that those disabilities and illnesses did at once, all of a sudden, vanish.

The proof offered by the plaintiff, if true, would demonstrate the fact that plaintiff is still and has at all times since 1969 been disabled.

The proof raises a presumption that the plaintiff's disability continued through the period in question and the burden has been shifted to the Secretary to demonstrate to the contrary. *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975).

The defendant asserts that the Secretary's original decision is *res judicata* and is not subject to being reopened in this procedure. I am unable to agree.

The basic determination of the examiner on February 10, 1972 was (R. p. 28) that ". . . . disability ceases effective 11–71 *due to failure to cooperate.*" [Emphasis added.] That is the only factual determination which was made in 1972. It does not bar the plaintiff from now having a fair hearing based on the facts as to his then disability which were not considered by the examiner at that time.

Where the only issue decided by the examiner was the issue of cooperation, that decision cannot in fairness bar a fair hearing and decision on the issue of disability.

## ORDER

1. The Secretary's denial of disability benefits for the period from January, 1972, to November, 1974, is reversed.

2. The case is remanded to the administrative law judge to conduct a hearing at which the plaintiff will be allowed to present evidence on the state of his disability during the period in question.

3. Such hearing shall be conducted and the result made known to this court by March 1, 1977.