Sterling S. RIGGIN

v.

Joseph A. CALIFANO,[1] Jr. Secretary of Health, Education and Welfare, and the United States of America.

Civ. A. No. HM76–1295.

United States District Court, D. Maryland.

April 27, 1977.

---

1. Joseph A. Califano, Jr. succeeded F. David Mathews as Secretary of Health, Education and Welfare on January 25, 1977. Pursuant to 42 U.S.C. § 405(g) (1970) the appropriate substitution has been made.

Aaron Kadish, Baltimore, Md., for plaintiff.

Jervis S. Finney, U. S. Atty., for the District of Maryland, John W. Sheldon, Asst. U. S. Atty., Baltimore, Md., Marianne P. Flood, Asst. Regional Atty., Dept. of H. E. W., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HERBERT F. MURRAY, District Judge.

Plaintiff, Sterling S. Riggin, instituted this action on August 30, 1976 pursuant to 42 U.S.C. § 405(g) (1970), seeking judicial review of the Secretary's denial of disability benefits under the Social Security Act, 42 U.S.C. §§ 301, *et seq.*

Plaintiff filed his original application for disability insurance benefits on July 29, 1975, alleging that he was disabled due to "difficulty in breathing (hiatal hernia), pain in legs, dizziness". (Tr. 71)[2]. The alleged onset date of disability was May 29, 1975. This claim was denied on September 24, 1975. (Tr. 75). Following a request for reconsideration, filed on October 2, 1975 (Tr. 77), plaintiff's claim for disability insurance benefits was again denied on January 19, 1976. (Tr. 78). Mr. Riggin then filed a request for hearing on January 23, 1976. (Tr. 79).

2. Reference is to the Court Transcript, filed by the defendant as part of his answer and made part of the court file in this action.

Pursuant to plaintiff's request, a hearing was held on March 16, 1976 before an Administrative Law Judge of the Social Security Administration. (Tr. 13–70). Mr. Riggin, who was represented by Dr. M. B. Levin, plaintiff's personal physician, testified under oath, as did Dr. Levin, Mrs. Riggin, and Richard E. Lawrence, a vocational expert. On April 22, 1976, the Administrative Law Judge filed a written hearing decision in which he found that the plaintiff was not entitled to disability benefits because he was not prevented from engaging in any substantial gainful activity by his physical impairments. (Tr. 9). The Administrative Law Judge found specifically that the claimant had mild pulmonary emphysema and mild to moderate anxiety, and further that he was unable to perform heavy manual labor or work requiring frequent bending, lifting or stooping, but that he retained the residual functional capacity to engage in other work.

Following that decision, plaintiff, on May 7, 1976, filed a request for a review of the above-detailed hearing decision. (Tr. 4). On June 30, 1976, the Appeals Council of the Social Security Administration declined to take further action in the case, thus affirming the decision of the Administrative Law Judge. (Tr. 3). That affirmance became the final decision of the Secretary of Health, Education and Welfare for purposes of review in this Court. 20 C.F.R. § 404.951.

The plaintiff, who was born on November 9, 1916, weighed approximately 155 pounds on the date of the hearing before the Administrative Law Judge, and was approximately 5' 11" tall. (Tr. 30). He has completed the seventh grade of formal education, and has worked as a carpenter and joiner at a shipyard for all of his adult life. (Tr. 31). Mr. Riggin testified at the hearing that he owns a car and is able to drive. Although his wife does most of the driving on trips, he testified that since the onset of his alleged disability they have made two trips involving journeys of 140 miles each way (Tr. 33), and that he has been able to drive significant portions of these trips amounting to approximately 25 to 40 miles.

(Tr. 33). Plaintiff collects coins as a hobby and performs minor housekeeping functions to assist his wife. (Tr. 33, 34). Plaintiff is able to walk approximately two blocks at a time, and more with short rest stops. (Tr. 33).

## PLAINTIFF'S MEDICAL HISTORY

Plaintiff was admitted to the South Baltimore General Hospital on April 11, 1974. The records of that admission, which lasted until April 27, 1974, were admitted in evidence and considered by the Appeals Council. (Tr. 101–123).

A discharge summary dictated by Dr. Tiu indicates that plaintiff's original complaints were of shortness of breath and chronic retrosternal discomfort which was not related to any particular time. Plaintiff's shortness of breath reportedly related to walking up steps and on walking approximately three to four blocks. The patient related these symptoms to a recurrent hiatal hernia. Physical examination revealed a well developed, well nourished, fully alert oriented male who was not then in acute distress. Blood pressure was recorded at 120/80, temperature at 98 degrees, respirations 20 per minute. The report indicates that generally there were no significant findings. Laboratory reports indicated that CBC, urinalysis, chemistry profile, and STS were within normal limits. Plaintiff's electrocardiogram was within normal limits, and a chest X-ray showed his heart to be within the upper limits of normal. A gastrointestinal series revealed minimal spasticity of the duodenal bulb and the gallbladder was found to be normal. A gastric analysis performed on April 18, 1974 showed no significant curve and an electroencephalogram was normal. Plaintiff's hospital course was described as uneventful. He was able to walk around the hospital with no shortness of breath. His vital signs remained stable, and afebrile. An esophagoscopy and a gastroscopy were performed on April 17, 1974 and showed some esophagitis with free reflux but no definite evidence of recurrent hiatal hernia. Plaintiff

was discharged on April 27, 1974 in satisfactory condition. The discharge diagnosis was reflux esophagitis; anxiety reaction; aerophagia; and dyspnea secondary to the reflux esophagitis and aerophagia. (Tr. 106).

On August 28, 1975, plaintiff's personal physician, Dr. Levin, reported that plaintiff had undergone an operation for correction of a hiatal hernia in 1970. In 1972, there was a recurrence of the previous difficulties. Recurrence of the same symptoms required a hospitalization in April of 1974. Plaintiff was diagnosed as having a "sliding hiatus hernia, postoperative, returned under strain of climbing and lifting; hyperchlorhydria despite bilateral vagotomy; gastric dilation and diaphragmatic pressure resulting in dyspnea and marked distress, pylorospasm, cardia-esophagitis with spasm, P.O. pyloroduodenal ulcerative bleeding following salicylates, migraine, autonomic bilateral post-vagotomy and hiatal hernia with traumatic somatic neuritis." (Tr. 124). Dr. Levin stated that plaintiff's breathing involvement was worse in humid weather, that his nerves are worse and that he cannot do any climbing of stairs, etc. without aggravated leg pain and breathing, and that he clears his throat with dyspnea. (Tr. 124).

On September 17, 1975, Dr. Heinritz diagnosed Mr. Riggin's condition as "esophagitis, anxiety, aerophagia, and probable mild obstructive pulmonary disease." His symptoms were described as retrosternal discomfort, shortness of breath, and abdominal bloating. Dr. Heinritz observed that the plaintiff's abdomen did appear distended at times. He was treated with antacids, sedation, and anticholinergics with fair response. Dr. Heinritz noted that he had not seen the plaintiff for approximately one year prior to the date of the report. (Tr. 125).

Mr. Riggin was examined by Dr. Thomas W. Snyder on October 6, 1975. Dr. Snyder reported the plaintiff's heart was within the upper limits of normal in terms of size and that there was minimal calcification present in the wall of the aortic arch. Plaintiff's lungs were well expanded and essentially clear except for minimal linear fibrotic streaking in the right costophrenic angle region, flattening of the diaphragm and increase in the AP diameter of the chest. Dr. Snyder concluded that plaintiff exhibited arteriosclerotic changes involving the thoracic aorta; mild pulmonary emphysema; and old post inflammatory changes in the right base. An old healed rib fracture on the right side was noted also. (Tr. 126).

Mr. Riggin was examined on July 31, 1975 by Dr. Robert B. McFadden. Dr. McFadden concluded that the plaintiff did not demonstrate signs of heart failure or myocardial ischemia. He did note, however, a marked functional overlay which, in his opinion, rendered the patient unable to carry out his regular occupation. (Tr. 129).

On November 18, 1975, plaintiff was interviewed by Dr. Charles S. Rafky, a psychiatrist, at the request of the Department of Disability Determination. On the basis of his mental status examination, Dr. Rafky concluded that Mr. Riggin had a mild to moderate anxiety reaction but that he was nevertheless capable of engaging in some type of substantial gainful activity. (Tr. 131).

On December 21, 1975, plaintiff was seen at the Pulmonary Division of the Maryland General Hospital. The examiner, Dr. Michael G. Hayes, reported that the studies were inadequate because of the plaintiff's lack of cooperation and effort. However, one result which Dr. Hayes described as adequate was obtained, and he concluded that that curve would indicate a very mild obstructive defect. (Tr. 133).

## STANDARDS OF REVIEW

In order to be eligible for disability benefits the claimant must establish that he is under a disability within the meaning of the Act. "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as follows:

Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental im-

pairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months . . .

Section 423(d)(2)(A) provides that:

An individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . .

■ The burden is on the claimant to furnish medical and other evidence of the existence of a disability. 42 U.S.C. § 423(d)(5) (1970). The sole issue before this Court is whether there is "substantial evidence" to support the Secretary's decision. 42 U.S.C. § 405(g) (1970). The fact that the record taken as a whole might support a different conclusion is immaterial. The language of Section 405(g) precludes a *de novo* judicial proceeding and requires that the Court uphold the Secretary's decision even if the Court should disagree with the decision so long as it is supported by substantial evidence. *Whiten v. Finch,* 437 F.2d 73 (4th Cir. 1971); *Blalock v. Richardson,* 483 F.2d 773 (4th Cir. 1972). The phrase "substantial evidence" has been defined by the Fourth Circuit Court of Appeals to be:

. . . evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. *If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".* (emphasis added).

*Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966); *Blalock v. Richardson, supra,* at 776.

■ There are four elements of proof to be weighed in determining whether there is substantial evidence to support the Secretary's decision. These are:

1. The objective medical facts; . . .

2. The diagnoses and expert medical opinions of treating and examining physicians on subsidiary questions of fact;

3. Subjective evidence of pain testified to by the claimant and corroborated by [family] and his neighbors;

4. The claimant's educational background, work history, and present age.

*Underwood v. Ribicoff,* 298 F.2d 850, 851 (4th Cir. 1962); *Blalock v. Richardson, supra.* Thus, it is for the Secretary to weigh the evidence and resolve conflicts therein, and the purpose of review in this Court is not to substitute the view of this Court for that of the Secretary so long as there is substantial evidence to support the Secretary's conclusion.

CONCLUSION

■ Applying these standards of review to the instant case, it becomes clear that the determination of the Secretary of Health, Education and Welfare that plaintiff is not entitled to disability insurance benefits must be affirmed.

■ In the instant case, plaintiff has made a *prima facie* showing of disability to engage in his previous occupation as a carpenter. This follows from the Administrative Law Judge's conclusion that the plaintiff is unable to perform heavy manual labor or work requiring frequent bending, lifting or stooping. (Tr. 9). Thus, the burden shifts to the Secretary to show by competent evidence that the claimant retains the residual functional capacity to engage in other forms of substantial gainful activity in view of his previous vocational background, age, and education. *Taylor v. Weinberger,* 512 F.2d 664, 666 (4th Cir. 1975).

Dr. Richard E. Lawrence, a vocational expert, was produced by the Administration and testified under oath at the proceeding before the Administrative Law Judge. Although Dr. Lawrence testified that if the claimant had all of the limitations and restrictions that he alleged in his testimony there would be no substantial gainful activ-

ity in which he could engage, he concluded that, based upon the assumption that plaintiff had good use of his upper extremities and that he would be able to alternatively sit and stand for an eight-hour period, Mr. Riggin would be able to engage in sedentary pursuits such as an inspector in a clothing manufacturing firm, a filling line operator, or a trimmer. (Tr. 66–69). Dr. Lawrence testified that based upon his experience in the field and vocational surveys which he had conducted these three particular jobs would be available in the region in which plaintiff lives. (Tr. 69).

The question then becomes whether there is substantial evidence upon which the opinion of the vocational expert and the conclusion of the Administrative Law Judge that plaintiff would be able to engage in sedentary occupational pursuits and that he retained good functional use of his upper extremities, could be based. This is so because the opinions of a vocational expert which are based upon alternative assumptions can only discharge the Secretary's burden in cases such as this when there is evidence in the record tending to establish a basis for the assumptions so made. *Chester v. Mathews,* 403 F.Supp. 110, 118 (D.Md. 1975). In the instant case there is evidence, both medical and testimonial in nature, which tends to support the proposition that plaintiff is able to perform tasks requiring use of the upper extremities and small amounts of walking.

The reports concerning plaintiff's breathing problems indicate that he has a "very mild obstructive defect" (Tr. 133), and that he has "mild pulmonary emphysema". (Tr. 126). Despite Dr. Levin's conclusion that plaintiff was permanently disabled (Tr. 56), when questioned by the Administrative Law Judge as to whether refraining from improper diet and hard physical labor would cause symptoms to subside, Dr. Levin responded in the affirmative. (Tr. 48). Plaintiff's own testimony indicates that he is able to walk for short distances of up to two blocks and with occasional rest would be able to walk more. (Tr. 33). In fact, plaintiff indicated that he takes short walks around the house early in the morning, that later in the morning he takes a walk of approximately one and one-half blocks to a local store to purchase a magazine, and that he then returns on foot. (Tr. 36). In addition, after dinner plaintiff apparently takes another walk and then he and his wife go for a short ride in their automobile. (Tr. 37). In between these excursions plaintiff engages in such sedentary pursuits as reading the newspaper, working with his coin collection, or other household duties such as helping his wife with the dishes or going down to the basement for light cleaning and straightening. (Tr. 34–37). Finally, Mr. Riggin testified that standing still rather than walking aggravates his condition. (Tr. 38).

To summarize, plaintiff is concededly unable to engage in his previous occupation as a carpenter in the shipbuilding industry because that pursuit requires heavy lifting, bending, stooping, and other strenuous activities. However, it appears that so long as he avoids strenuous work his symptoms should not appear. Based upon his own testimony plaintiff is able to walk for short periods so long as he has rest stops in between, and is able to perform light tasks such as clean-up and working with his coin collection which involve the upper extremities. Finally, the vocational expert testified, assuming that plaintiff would be able to engage in such sedentary pursuits as previously described, that several forms of substantial gainful activity would exist within the region in which plaintiff lives and for which plaintiff would be vocationally suited. Thus, the Secretary has discharged the burden imposed by *Taylor v. Weinberger, supra,* by showing that the claimant, considering his age, education and work experience and his skills and physical shortcomings, has the capacity to perform an alternative job and that such a job exists within the national economy. *McLamore v. Weinberger,* 538 F.2d 572, 574 (4th Cir. 1976). Accordingly, there is substantial evidence to support the determination of the Secretary of Health, Education and Welfare that plaintiff is not disabled within the meaning of the Social Security Act.

Therefore, it is, this 27th day of April, 1977, by the United States District Court for the District of Maryland, ORDERED:

1. That judgment be entered in favor of the defendant, Secretary of Health, Education and Welfare.

2. That copies of this Memorandum and Order be forwarded to Aaron Kadish, Esquire, counsel for plaintiff, and John W. Sheldon, Assistant United States Attorney, counsel for the defendant.

Raymond Howard, Howard, Singer & Meehan, St. Louis, Mo., for plaintiff.