**Doris M. JONES, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 89–185–NN.**

United States District Court,
E.D. Virginia,
Newport News Division.

May 25, 1990.

Lee E. Wilder, Rutter & Montagna, Norfolk, Va., for plaintiff.

Susan L. Watt, U.S. Atty.'s Office, Norfolk, Va., for defendant.

## ORDER

CLARKE, District Judge.

This matter comes before the Court on the plaintiff's petition for judicial review of a decision by the Secretary of Health and Human Services denying her claim for period of disability and disability insurance benefits. Both parties have moved for summary judgment.

### Background

The plaintiff, Doris M. Jones, filed a claim for disability insurance benefits pursuant to Title II of the Social Security Act, as amended, 42 U.S.C. sections 416(i) and 423, *et seq.*, alleging an onset of disability on November 5, 1987. Her claim was denied initially and upon reconsideration by the Social Security Administration. A hearing was subsequently held on December 12, 1988, before an Administrative Law Judge (ALJ). On February 28, 1989, the ALJ issued a written decision denying benefits. The Appeals Council denied the plaintiff's request for review, and the ALJ's decision thus became the final decision of the Secretary. The plaintiff challenges this decision of two grounds. First, she contends that the ALJ applied an improper legal standard in evaluating her claim of disabling pain. Secondly, she contends that the ALJ's decision is not supported by substantial evidence.

### ALJ's Decision

The ALJ found that Ms. Jones suffers from severe physical impairments but retains the residual functional capacity to perform sedentary work and is therefore not "disabled" as defined by the Social Security Act.[1]

At the time of the hearing Ms. Jones was a 52 year old, married female, with a tenth grade education. R. 12.[2] Her past work experience includes 14 years as a sewing machine operator, presser and supervisor in a dress factory. R. 12. In 1977, she installed sheets of balsa wood in ship's tanks. For approximately 10 years after that Ms. Jones worked as a welder's helper at the Newport News Shipyard. R. 12. In her last year of employment at the shipyard she worked in the MRA shop doing light duty from October 1986 to November 1987. She stopped working on November 5, 1987, because the shipyard had no work available within her work restrictions. R. 12.

After Ms. Jones left the shipyard, she received unemployment insurance for 24 weeks. R. 12. In order to receive those payments, she had to certify that she was able to work within her work restrictions. R. 12. During this time she applied to 58 companies for employment, but no employer called her back. R. 12. She last applied for work, answering help-wanted ads, in early November 1988. R. 12. At the hearing she stated that she cannot now do any kind of work because of problems with her arms locking, her thumb locking, and pain in her hands, arms, legs, and feet. R. 12. The ALJ found that Ms. Jones had not engaged in any substantial gainful activity since November 5, 1987.

The ALJ found that Ms. Jones suffers from physical impairments which, when considered in combination, are severe, R. 22, but that she retained the residual functional capacity to perform sedentary work

---

1. "Disability" is defined on page 994 *infra.*

2. References to the Record are abbreviated "R. ___."

activity.[3] R. 23. The ALJ also found that Ms. Jones's testimony with regard to her subjective complaints, including pain, was "not supported by the medical evidence of record and [was] not fully credible." R. 23. The ALJ concluded that based on Ms. Jones's "exertional capacity for a full range of sedentary work, and considering the claimant's age, education, and work experience, Section 404.1569 and Rule 201.-11, Appendix 2, Subpart P, Regulations No. 4 directs a conclusion of 'not disabled.'" The ALJ added that he employed the above cited rule as a "framework for decision-making" and that while Ms. Jones's nonexertional limitations, and pain, prevented her from performing a full range of sedentary work, R. 23, she was not disabled as defined by the Social Security Act. R. 23.

### Discussion

■ Under the Social Security Act, the scope of judicial review of the final decision of the Secretary is limited to a determination of whether, based on the record as a whole, the decision is supported by substantial evidence. 42 U.S.C.A. section 405(g) (West 1983); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966)) (citations omitted).

■ A claimant for disability insurance benefits bears the burden of proving a disability. 42 U.S.C.A. section 423(d)(5); 20 C.F.R. section 404.1502 (1988); *Blalock v.*

*Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "Disability" is defined by statute as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. section 423(d)(1)(A). Once the claimant makes a prima facie showing of a physical impairment which effectively precludes her from returning to her past work, the burden of going forward shifts to the Secretary. The Secretary then must show two things: (1) that the claimant, considering her age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific type of job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir.1976); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir.1975).

To regularize the adjudicative process, the Social Security Administration has promulgated detailed regulations incorporating longstanding medical-vocation evaluation policies that take into account a claimant's age, education, and work experience in addition to her medical condition. These regulations were intended both to clarify for claimants how disability is determined when vocational factors are considered and to assure consistent disability determinations at all levels. 20 C.F.R. sections 404.-1501–404.1530 & Apps. 1, 2 (1988).

The regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *Id.* section 404.1503. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* section 404.1503(a). Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or

---

**3.** The ALJ found that the medical evidence establishes that Jones suffers from status-post bilateral carpal tunnel releases; degenerative changes in the cervical spine; degenerative changes in the left thumb; questionable thorac-

ic outlet syndrome and post-myelographic arachnoiditis; sensory nerve fiber irritation at the L4–5 level; and controlled hypertension with no evidence of significant end organ damage or other complications. R. 22.

equals the medical criteria of Appendix 1, warranting a finding of disability without considering vocational factors; (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both her remaining physical and mental capacities (defined as residual functional capacity) and her vocation capabilities (age, education and past work experience) to adjust to a new job.

When the fifth step is reached, the interrelation of these factors is governed by the rules of Appendix 2 and the remaining regulations, especially 20 C.F.R. sections 404.1504–404.1513. Appendix 2 consists of tables or "grids" that indicate the proper disability determinations for various combinations of age, education and previous work experience in conjunction with the individual's residual functional capacity, *i.e.*, her maximum capacity for sustained performance of the physical and mental requirements of jobs. *Id.* App. 2 section 200.00(c).

### Analysis

In this case, Ms. Jones argues that the ALJ erred at step five in determining that she retained the capacity to perform sedentary work. Her appeal presents two related issues to this Court: (I) whether the ALJ applied the correct legal standard in evaluating Jones's complaint of disabling pain and; (II) if so, whether the ALJ's finding of no disability was supported by substantial evidence on the record.

### I.

 Jones argues that the ALJ erred in not applying the correct legal standard for evaluating her complaints of pain. The Fourth Circuit has held that pain alone can be disabling and that it is the ALJ's responsibility to evaluate the effect of pain on a claimant's ability to function. *Walker v. Bowen,* 889 F.2d 47, 49 (4th Cir.1989); *Fos-*

*ter v. Heckler,* 780 F.2d 1125, 1128 (1986); *Myers v. Califano,* 611 F.2d 980 (4th Cir. 1980). Further, while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity. *Walker,* 889 F.2d at 49; *Foster,* 780 F.2d at 1128. Here, the ALJ found that:

> Although the claimant may suffer from some aches and pains in multiple areas, the medical evidence does not suggest that her pain is of such severity as to preclude the performance of at least sedentary work, such as the above-mentioned jobs [desk clerk, telephone order taker, and receptionist]. The evaluation of pain is just one step in the overall evaluation of disability, and the medical evidence simply does not contain medical signs or findings showing that she has any significant medical problem that could reasonably be expected to produce work-disabling pain.

R. 22.

 The passage above demonstrates that the ALJ applied the correct legal standard in evaluating Jones's pain; he found no objective medical evidence of a condition that could reasonably produce severe, debilitating pain. It also demonstrates that the ALJ considered the complaint of pain in conjunction with Jones's other impairments in determining her ability to work. *See* 42 U.S.C.A. section 423(d)(2)(C); *Hines v. Bowen,* 872 F.2d 56, 59 (4th Cir.1989) (the statute explicitly requires that the "combined effect of all the individual's impairments" be considered, "without regard to whether any such impairment if considered separately" would be sufficiently severe).

In addition to the lack of objective medical evidence supporting Jones's complaint of pain, the ALJ also found that her testimony with regard to the pain was not "fully credible." This is a critical finding because without medical evidence to indicate the existence of a condition which could produce disabling pain, the ALJ is left only with the subjective testimony of the claimant on which to base a finding of disability. Clearly, the ALJ is not required

to accept Jones's subjective testimony at face value. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.1984). In *Shively*, the Fourth Circuit stated that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Id.* citing *Tyler v. Weinberger*, 409 F.Supp. 776 (E.D.Va.1976).

Having considered the legal standard applied in evaluating Ms. Jones's complaint of pain, the lack of objective medical evidence indicating the presence of a condition that could reasonably produce debilitating pain, and according due weight to the ALJ's finding that the subjective testimony of Ms. Jones regarding her pain was not fully credible, this Court is of the opinion that the ALJ applied the correct legal standard in determining that Jones's complaint of pain did not render her disabled within the meaning of the Social Security Act. The remaining issue is whether the ALJ's finding of disability, taking into account all of Jones's exertional and nonexertional limitations, is supported by substantial evidence on the record.

## II.

■ There is substantial evidence in the record to support the finding that Ms. Jones was not entitled to a period of disability and disability insurance benefits. Of particular interest to this Court are the opinions of her treating physician, Dr. Stiles, a Board-certified orthopedist. R. 218. Dr. Stiles stated on three separate occasions that Ms. Jones was capable of employment, despite her complaints of pain. R. 199, 247, 268–70.

On November 16, 1987, Dr. Stiles submitted a medical report to the Virginia Employment Commission. R. 199. In the report, Dr. Stiles stated that Jones was immediately employable with restrictions. R. 199. Dr. Stiles stated that Jones could perform permanent light duty work subject to the following conditions: no climbing, light work with the hands, no gloves, no earmuffs, limited standing and walking, and no lifting over 8 pounds. R. 199.

On another occasion, during a deposition taken on August 1, 1988 Dr. Stiles testified with regard to the work that Jones could perform:

I don't think she's going to be able to do any type of work that requires strenuous labor type of work with either arm. She's not going to be able to hold machinery or hold tools or do work that requires her to hold them. She's not going to be able to work overhead.

Her primary ability to work would be more or less a sitting-type job where she used her hands minimally or where she possible walked about and delivered documents or mail or something of that nature.

R. 247.

Dr. Stiles also stated that Jones would not be able to write for long periods of time but could perform clerical work involving short notations and checking-off items. R. 247. Dr. Stiles further testified Jones could perform the tasks required for a job as a desk clerk at a motel/hotel, R. 260, or as a telephone order clerk. R. 262.

On November 15, 1988, Dr. Stiles submitted a "Physical Capacities Evaluation" in which he states that Jones is capable of performing all of the physical requirements of sedentary work. R. 270. Dr. Stiles stated the Jones could frequently lift up to 5 pounds, occasionally lift as much as 10 pounds, stand and walk for 2 or 3 hours and sit for 5 to 6 hours during an 8–hour work day. R. 268. These opinions are consistent with the findings of the ALJ.

■ Generally, the opinion of a claimant's treating physician is "entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir.1986) (quoting *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir.1983)). A treating physician's opinion may be disregarded only if there is persuasive contradictory evidence. *Id.* Dr. Stiles has been Jones's treating physician from July 20, 1983, to March 14, 1988. R. 194–208. His office notes chronicle in

detail the many visits of the claimant, the malady complained of, and the remedy prescribed. R. 194–208. While the claimant has been examined by at least six physicians of various fields of expertise, none of them have offered diagnoses which differed greatly from the diagnoses of Dr. Stiles, and, as the medical history below reflects, none were willing to opine that she was incapable of working.

In April 1982, Dr. Parsons of the Peninsula Institute for Community Health Institute saw Ms. Jones for hypertension and chronic pain in her hands, wrists, arms, and back. He attributed her problems to her use of pneumatic tools, which required gripping, at the Newport News Shipyard and recommended that she be transferred to another department. R. 150. Shortly thereafter, she began to see Dr. Stiles whose findings are mentioned above. R. 194–208. Dr. Stiles referred Ms. Jones to Dr. Koller, an internist and rheumatologist, who in a report dated October 23, 1985, stated that her complaints of ulnar neuropathy "may be thoracic outlet syndrome which corresponds to her work history." R. 151. Dr. Koller suggested an "aggressive physical therapy program for [thoracic outlet syndrome] (*rest and light work certainly have not helped*)." R. 151 (emphasis added).

Dr. Stiles's office records reflect that in November 1985, Ms. Jones's complaints continued and he thought it may be thoracic outlet syndrome, although he could not find any weakness of the radial pulse with abduction. R. 205. In fact, he was unable to find any reason for her problems except thoracic outlet syndrome. R. 204. Thus, in February 1986 she underwent bilateral carpal tunnel releases to relieve the pain in her wrists. R. 204.

In April of 1986 Dr. Stiles referred Ms. Jones to the Duke University Medical Center Pain Clinic. The first doctor she saw, Dr. Tourian, found that none of her multiple aches and pains fit into a neuromuscular, radicular and/or peripheral nerve damage category and that the probable cause of her pain was depression. R. 153. Dr. Tourian stated that she needed to be evaluated and treated for depression. R. 153. Ms. Jones stated at that time that the numbness in her hands had gone away since the February surgery. R. 153.

By June 12, 1986, Dr. Stiles stated that Ms. Jones was doing better and could return to light work. R. 203. However, she returned to Dr. Stiles on June 17, 1986, because of acute swelling in her hand apparently from performing work requiring constant and strenuous use of both hands. R. 202. On September 3, 1986, Dr. Stiles wrote that Ms. Jones had a 10% permanent disability of both upper extremities as a result of her carpal tunnel syndrome and that this condition would not improve in the future. R. 202. Dr. Stiles referred her to Dr. Reiss, a psychologist, for management of chronic pain and for psychotherapy relating to depression which was secondary to the chronic pain. R. 156.

Ms. Jones saw Dr. Reiss from September 10, 1986 to December 9, 1987. Her treatment consisted of cognitive psychotherapy and relaxation training, biofeedback and training in self-hypnosis for improving adjustment to the complaints of chronic pain. R. 156. Dr. Reiss's diagnoses was that psychological factors were affecting Ms. Jones's physical condition. R. 159. As a result of the treatment, Dr. Reiss reported that her complaints of severe pain and depression became less frequent and less intense. R. 159.

On March 3, 1987, Ms. Jones was seen by Dr. Rinaldi, a neurosurgeon, whose medical impression was that "[t]he patient has a bilateral ulnar neuropathy worse on the right, due to compression at the elbow. *There is no evidence to suggest a thoracic outlet syndrome.*" R. 168 (emphasis added). However, on April 7, 1987, Dr. Stiles wrote: "[s]he has seen Dr. Rinaldi who thought that her problem all stemmed from ulnar nerve neuritis at the elbow. I doubt this very seriously." R. 200. Further, in November of 1987, Dr. Stiles reported a diagnoses of carpal tunnel syndrome and thoracic outlet syndrome. R. 199. He stated that although Ms. Jones could not return to her past work, she could, however, return to work under the following

conditions: permanent light duty involving no climbing, no gloves, no earmuffs, limited standing and walking, no lifting greater than eight pounds, and involving light work with her hands. R. 199.

The medical record also contains notes from Dr. O'Neill, Ms. Jones's treating internist, covering visits from January 9, 1986 through January 20, 1988. In a report dated March 22, 1988, Dr. O'Neill states that he had been following Ms. Jones primarily for hypertension and fibromygalia and that neither of these conditions would warrant a finding of disability. R. 209.

Ms. Jones was also seen by Dr. Neff, an orthopedist, for an independent medical examination concerning complaints of pain in her back, arms, wrists, and hands. In an evaluation dated August 5, 1988, Dr. Neff recorded the following impression:

As a result of my orthopedic examination on August 5, 1989, I find no objective evidence of pathology in either upper extremity to account four her symptomatology. I, as a result of my record review, find no documented objective evidence that this woman has ever been proven to have nerve root compression of either upper extremity. I, therefore, find no disability of either upper extremity.

As a result of my medical examination and review of medical records which have been provided, I find no evidence of permanent partial disability of her back or lower extremities and can find no conclusive evidence to indicate significant back impairment or pathology.

R. 277.

Finally, and as noted above, on November 15, 1988, Dr. Stiles expressed the opinion that Ms. Jones has the residual functional capacity to perform sedentary work with certain limitations. R. 268–70.

The above cited medical evidence offers no firm diagnosis of Ms. Jones's impairments. The record is devoid of objective medical evidence of a condition that could reasonably be expected to produce pain of a disabling magnitude. The record does support, however, Dr. Stiles's opinion that Ms. Jones is capable of sedentary work. This Court finds that Dr. Stiles's conclusions are supported by specific medical findings and warrant the great probative weight suggested by the Fourth Circuit. Accordingly, in the absence of persuasive contrary evidence, *Foster*, 780 F.2d at 1127, this Court finds that the ALJ was entitled to rely on Dr. Stiles's repeated opinion that Jones possessed the capability to perform sedentary work.

Dr. Stiles's opinion of Ms. Jones's employment possibilities was endorsed by the vocational expert, Dr. Herman Bates, who testified at the hearing. Dr. Bates was asked to consider the work-related limitations suggested by Dr. Stiles in conjunction with Ms. Jones's age, education, and work background, in forming an opinion as to her capacity to perform alternative sedentary work. R. 78–79. In response, he testified that Jones could work as a telephone order clerk or desk clerk, R. 81, and also identified the job of receptionist. R. 82–84. Moreover, Dr. Bates testified that these jobs existed in not insignificant numbers in the *local* economy.[4] R. 82–84.

Additionally, there seems to be little doubt that Ms. Jones is aware of her own ability to work. In her testimony before the ALJ, she testified that she would be willing to try working as a receptionist and a telephone order clerk if she could use headphones. R. 74–75. She also testified that she had been responding to newspaper help wanted ads, unsuccessfully, in the month immediately preceding the hearing. R. 72–73. Furthermore, Ms. Jones admits that following the time she stopped working in November 1987, she received six months of unemployment insurance which required she certify that she was able to work within the work restrictions imposed by Dr. Stiles. R. 45. These statements are consistent with those of Dr. Stiles and Dr. Bates in that she believes there must be something she can do.

---

**4.** Dr. Bates reported that according to estimates prepared by the Virginia Employment Commission for the year 1990, there are 177 order clerk jobs, 515 receptionist jobs, 244 switchboard receptionist jobs, and 597 desk clerk jobs available in the Newport News, Virginia area. R. 85.

The record indicates that upon leaving the shipyard Ms. Jones tried very hard, without success, to find employment. R. 71, 271. However, the law is clear that one's ability to secure a job is not pertinent to the determination of whether one can actually perform the job. Congress, in the pursuit of a uniform and consistent application of disability standards across the nation, decided that the Secretary should not consider external economic factors when making disability determinations. *See* 42 U.S.C. section 423(d)(2)(A) (a claimant is not disabled if he is capable of performing substantial gainful work "regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her] or whether [she] would be hired if [she] applied for work."). Thus, the fact that Ms. Jones has failed, despite great effort, to secure a job is irrelevant for the purposes of this review.

Having reviewed the record in its entirety, this Court finds that there is no persuasive evidence that Ms. Jones "is unable to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment that can be expected to last a continuous period of not less than 12 months." 42 U.S.C. section 423(d). The record does reflect that Ms. Jones's pain was considered by the ALJ in determining her residual functional capacity. The record further reflects that the ALJ applied the correct legal standard in evaluating Ms. Jones's pain. However, Ms. Jones's subjective complaints are not supported by objective medical findings. The medical reports above, particularly those of her treating physician, Dr. Stiles, are at odds with the Ms. Jones's own assessment of her ability to work. In this situation, the Court holds that the ALJ could not properly reject the expert opinions of the treating physicians and the vocational expert, in favor of Ms. Jones's subjective complaints. *See Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir.1984). In any event, it is clear to this Court that, based upon the record, the evidence is sufficient to support the conclusions of the ALJ.

Accordingly, this Court finds that the ALJ's determination that Ms. Jones is capable of sedentary work and is not disabled is supported by substantial evidence. The plaintiff's motion for summary judgment is DENIED and the defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.