**Mattie L. MONTGOMERY, Plaintiff-Appellant,**

**v.**

**Caspar W. WEINBERGER, Secretary, Health, Education & Welfare, Defendant-Appellee.**

**No. 74–1905.**

United States Court of Appeals, Sixth Circuit.

May 12, 1975.

Donald R. Pierce, Louisville, Ky., for plaintiff-appellant.

George J. Long, U. S. Atty., James H. Barr, Asst. U. S. Atty., Louisville, Ky., for defendant-appellee.

Before EDWARDS and ENGLE, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

In this case the appellant, Mattie L. Montgomery, appeals from the District Court's affirmance of the Secretary of Health, Education and Welfare's denial of her application for total disability Social Security benefits. The appellant exhausted all of her administrative remedies and filed her petition for an award of disability benefits in the United States District Court for the Western District of Kentucky. (Sec. 405(g) Title

42, U.S.C.) The District Judge reviewed the administrative record and found that the denial of appellant's claim by the Administrative Law Judge and the Social Security Appeals Board was supported by substantial evidence. He thereupon affirmed the judgment of the Secretary.

The appellant was born on June 20, 1921, is married and has two daughters ages 10 and 15. She graduated from High School and had worked for Western Union as a teletype operator for approximately thirty years until September 15, 1971, when she had to give up her work because of her physical condition.

In her testimony (Tr. 35) she described her physical condition as follows:

"Well, I have aching all over, in all my joints of my body, I'm sore and stiff and I have aching in my back, I can't stand on my feet; my left knee has been swollen for two years and I have blurred vision and temporary blindness and my left jaw is pushed out of the socket, and I'm losing the hearing in my left ear and just about every bone in my body aches. There's days I can't get out of the bed at all. I'm bedfast. I can't do housework. I was a typist. I couldn't use my hands anymore because I couldn't hit the keys of the typewriter because when I did it was just so painful I couldn't stand it."

Mrs. Montgomery filed her application for disability benefits on March 23, 1972, alleging that she became disabled on September 15, 1971. It is conceded that she has met the earnings requirement for an allowance of disability benefits. (Sec. 423(c), Title 42, U.S.C.) Disability as defined in the act is the

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." (Sec. 423(d)(1)(A), Title 42 U.S.C.)

■ The evidence establishes that the appellant can not return to her work as a teletype operator with Western Union. Her testimony in this respect is supported by a statement of the District Manager of Western Union that she

"is unable to perform her duties because of her inability to type due to condition of her hands. Typing is her primary work function." (Tr. 101)

It is not claimed on behalf of the Secretary that she can return to this work. In this status of the case, the burden shifts to the Secretary to present evidence that appellant can perform substantial work in her physical condition and that there are jobs in the national economy which she could perform. Vaughn v. Finch, 431 F.2d 997, 998 (C.A.6) and cases there cited. However,

" * * * once the Secretary has met this burden, the burden of demonstrating disability by a preponderance of the evidence is on the claimant."

Vaughn v. Finch, 999, *supra*. See also Gray v. Finch, 427 F.2d 336 (C.A.6); Garrett v. Finch, 436 F.2d 15 (C.A.6); Giddings v. Richardson, 480 F.2d 652 (C.A.6); Whitson v. Finch, 437 F.2d 728 (C.A.6).

■ The question before us is whether there is substantial evidence in the record to support the Secretary's finding that there are other jobs in the national economy which could be performed by the appellant in her physical condition.

Dr. Peveler, who was appellant's family doctor stated that he had been seeing the patient approximately once a month for her rheumatic problem. She had developed a rheumatic involvement in the left temperemandibular joint which might ultimately require surgery. He considered her to be totally and permanently disabled.

Dr. Peak, an arthritic specialist, examined the appellant at the request of Dr. Peveler, her family doctor. Dr. Peak took a complete history of the appellant's condition and made a detailed physical and Joint and Justa-articular examination of her. He notes some surgical history which apparently does not contribute to her present condition. His diagnosis was,

"Osteoarthritis and possible early mild Rheumatoid Spendylitis with peripheral rheumatoid as well."

His further comment,

"She certainly is a genuine person and has been a hard worker all of her life but she may not be able to return to work now with the pathology at hand as her job is exhausting and I think perhaps too taxing for her current condition."

We fail to see how it could be determined from this medical report that the appellant would be able to perform any of the jobs suggested by vocational expert, David Dobson.

At the request of Dr. Peak, Dr. Baker gave the appellant a complete x-ray examination. His detailed report in medical terms is given in transcript at page 115. He summarizes his impression to Dr. Peak as follows:

"IMPRESSION:

1. Normal chest.

2. *Osteoarthritis of the cervical spine* with minimal narrowing of C5–6 disc space; there *is encroachment* bilaterally on the neural foramina at the C5–6 and C6–7 levels by small osteophytes.

3. The lumbosacral spine, pelvis and hips are normal except for slight narrowing of the lumbosacral disc space and minimal *osteophytic changes in the sacroiliac joints.*

4. The feet are within normal limits.

5. Views of the hands show very slight narrowness of all of these joints. The changes are most likely secondary to *osteoarthritis;* note is made of a small 1 x 3 millimeter ossification beneath the soft tissue swelling adjacent to the (illegible) * * * of the left thumb."

Dr. Baker makes no estimate of the percentage of disability that the appellant might have nor does he attempt to say how much pain she might suffer as the result of the condition he found.

Drs. Marx, Bayer and Ewing, oral surgeons, did an operation on the appel-

lant's jaw to put it back in place. Dr. Ewing describes her condition as having been complicated by long standing rheumatoid arthritis. At the time of Dr. Ewing's report the appellant's jaws were wired together.

The appellant describes this jaw condition as follows:

"It was pushed—this arthritis pushed the bone out of socket and as you can see my face is one-sided. I mean my jaw is just pushed out and I can't open my mouth too wide to eat. I have to have small bites and sometimes I can't open my mouth at all. I have to just eat soup through a straw. It's very painful in the bone."

Dr. Roles made an examination on behalf of the Secretary. His medical report shows the appellant to be generally normal. He found that certain body movements were within normal range but that, "All motions of her joints appear to be done with effort." He gave as his "impression this patient has Rheumatoid Arthritis and Osteoarthritis."

The Administrative Law Judge based his conclusion that the appellant was capable of performing some type of work that existed in the national economy on the testimony of David Dobson. Mr. Dobson from the nature of his work with the Jewish Vocational Service of Louisville qualified as a Vocation Expert.

Mr. Dobson testified that he had read the record and had heard the testimony of the appellant. In answer to a hypothetical question in which the Administrative Law Judge substantially summed up the evidence with reference to the appellant's condition, he said

"that this woman would have to be considered unemployed or unemployable for the simple reason that all the work that she was engaged in has required the use of her fingers and the hands and if the fingers and the hands are as limited as you have indicated, I don't know of any kind of work she could engage in along with various other limitations you have indicated such as the pain, the blurring of the

vision and the difficulty with the legs."

In connection with the blurring of the vision he said that in his thirty years of experience he did not know of any employer that would be willing to put up with that because it would be dangerous to the individual and to others around her.

After some questioning by the expert and "clarification" by the law judge Mr. Dobson testified that there were jobs in the national economy which she could do, such as, 1. Inspector in a laundry, 2. Rubber of furniture, 3. Pantograph operator and 4. Skip tracer. Mr. Dobson explained the nature of these jobs and said that they were available locally and in the national economy.

On cross examination Mr. Dobson was asked if the appellant would be employable if she were not able to work a full day of eight hours, if she could not be regular in her attendance at work or if in lifting she could use only one hand. He answered that if one or all of these factors were important it would seriously limit her ability to be employed. He further said,

"all employers expect regular attendance from their employees. They expect them to be able to meet certain levels of production."

There is undisputed testimony in the record that the facts suggested in the questions of cross examination do exist. Thus we find that the testimony of Mr. Dobson relied on by the Administrative Judge is negatived by his testimony on cross examination.

We conclude that the finding of the Secretary that the appellant is not entitled to disability benefits is not supported by substantial evidence.

The judgment of the District Court is reversed. The case is remanded to the District Court for entry of an order awarding benefits.