Norman T. WILLIAMS, Plaintiff,

v.

F. David MATTHEWS, Secretary,
Health, Education and Welfare,
Defendant.

Civ. A. No. 77–0039–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Nov. 1, 1977.

Barry W. Norwood, Richmond, Va., for plaintiff.

Ray A. Carpenter, Asst. U. S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Norman T. Williams brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary holding that he is not entitled to disability benefits. The sole issue before the Court is whether the final decision of the Secretary is based upon substantial evidence. Each of the parties has moved for summary judgment. The matter is thus ripe for disposition.

The Secretary, and not the Court, is charged with the duty of weighing the evi-

dence and resolving material conflicts in same. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Court is, however, duty bound to give careful scrutiny to the entire record to insure that there is a sound foundation for the Secretary's findings and that his decision is rational. *Wyatt v. Weinberger,* 519 F.2d 1285 (4th Cir. 1975); *Taylor v. Weinberger,* 512 F.2d 664 (4th Cir. 1975); *Vitek v. Finch,* 438 F.2d 1157 (4th Cir. 1971).

Facts are not in dispute. The record may be summarized as follows:

Plaintiff is a sixty-one year old male with an eighth grade education. His work experience is varied: he worked in a slate quarry from 1932 to 1936; for a railroad company from 1936 to 1950; and for Reynolds Metals Co. for one or two years. Commencing in 1953, he worked as a manager of a storage company. He remained in that position until November of 1974, at which time he entered the hospital for a transurethral resection ("TUR"), of the prostate and bladder. On January 13, 1975 plaintiff attempted to return to work, but suffered violent chills and left work after a few hours.

On January 31, 1975 a pulmonary function study was performed on plaintiff at Richmond Memorial Hospital. The FEV–1 showed 2.70 pre-dilator and 2.90 post-dilator; the MVV showed 128 predilator and 138 post-dilator.[1]

On February 28, 1975 plaintiff was examined by Dr. Clifton L. Parker. After giving plaintiff a physical examination and considering the results of the pulmonary function studies, Dr. Parker concluded that plaintiff had a "severe chronic obstructive pulmonary disease" consisting of chronic bronchitis and emphysema. Dr. Parker stated unequivocally that "[f]rom the standpoint of the patient's present job I feel that he is totally and permanently disabled."

On March 13, 1975 plaintiff filed an application with the Richmond branch office of the Social Security Administration seeking disability benefits. In August of that same year a state disability examiner reviewed Dr. Parker's report on plaintiff and the attached pulmonary function studies from Richmond Memorial Hospital. The disability examiner apparently gave no weight to Dr. Parker's conclusions, for he denied plaintiff's claim on the grounds that the pulmonary function study showed that plaintiff had sufficient residual breathing capacity to perform heavy work and that plaintiff "can do usual work."

Plaintiff's requested reconsideration, but the application was again denied. Thereupon plaintiff requested a hearing, which was conducted in Richmond on October 6, 1976.

At the hearing, plaintiff testified that he was suffering from pulmonary disease and from prostatitis, and was consequently unable to work. Records in plaintiff's file indicated that he had worked as a motel clerk at a friend's motel from January 20, 1976 to March 12, 1976, but he testified that he had been forced to give up that position because of intense pain in his legs. He stated that he had difficulty standing for any length of time because of the pain—a pain so severe that it sometimes awakened him at night—and that he could not sit for more than half-an-hour before his arms started to get numb. He stated that he experienced pain in his chest and shoulders whenever he exerted himself, and that he suffered pain in his arms and legs even when he did not exert himself. He further testified that while he could walk approximately one block, if he walked further he became short of breath.

Concerning his daily activities, plaintiff stated that he helped his wife around the house by washing the dishes and doing a little cleaning, but that he could not mow the lawn even with a power mower. He also testified that he had some time previously tended a small garden in his back yard but had to cease because of his physical difficulties.

1. These figures represent the results of pulmonary function studies determining the "forced expiratory volume," hence the initials "FEV."

The medical records are generally favorable to plaintiff's claim of disability.

Records concerning plaintiff's November 1974 TUR operation and his February 1975 examination by Dr. Parker have heretofore been discussed. The hearing record additionally contains the results of several other examinations. On May 29, 1975 plaintiff was examined by Dr. Marion L. Rice, Jr., his family physician, who concluded that plaintiff had undergone a "rapidly severe increase" of obstructive lung disease. Dr. Rice concluded that plaintiff was "totally disabled under optimum conditions for any usual activities for which he is qualified and definitely, totally disabled when attempting to work under the conditions [of his job at the storage company]."

On January 16, 1976, plaintiff was given a neurological examination by Dr. Robert P. Singer. This examination revealed patchy loss in both upper and lower extremities, which the doctor concluded to be more of a neuropathy type than a true root sign. The doctor concluded that plaintiff had pulmonary neuropathy secondary to his chronic disease.

On February 3, 1976, Dr. Rice addressed a letter to plaintiff's attorney stating that in his opinion it was "now obvious that Mr. Williams is unable to perform any substantial, gainful work" and that his impairment was "so severe as to prevent him from working not only in his usual occupation, but in any other substantial, gainful work considering his age, education, training, and work experience." Dr. Rice recommended that total disability be awarded to plaintiff by the Secretary.

On May 6, 1976, plaintiff was examined by Dr. Edward S. Ray. He administered a series of pulmonary function studies which indicated a moderate impairment in plaintiff's ventilatory function. However, Dr. Ray recommended that plaintiff undergo arterial gas studies to better evaluate his pulmonary function. The doctor expressed no opinion at that time as to plaintiff's disability.

On October 4, 1976, just two days prior to plaintiff's hearing, Dr. Parker wrote plaintiff's attorney stating that plaintiff was "definitely disabled and cannot work in a dirty, dusty atmosphere." The doctor added, however, that there were "many patients with this degree of pulmonary disability who work in sedentary jobs such as clerks, etc. It would be difficult for me to state based on the degree of pulmonary function that we have demonstrated that the patient could not be employed in some sedentary work." But the doctor further qualified this by stating:

"Mr. Williams' training and past may be such that he will not be able to find employment in a sedentary occupation. If that is so, then I would think he would be disabled not only because of his pulmonary emphysema but also because of his age and inability to find work in an area suitable for his physical limitations."

■ On October 18, 1976, the Administrative Law Judge found that plaintiff was not totally disabled. Plaintiff submitted a timely request for review by the Appeals Council, which affirmed the hearing decision by letter of December 1, 1976. Accordingly, the hearing decision stands as the Secretary's final decision, and this Court must determine whether that decision is supported by substantial evidence.

The term "disability" is defined in § 223 of the Social Security Act as:

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . .

\* \* \* \* \* \*

"(2) For purposes of paragraph (1)(A)—
  "(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in

the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

There is no question that the plaintiff is "unable to do his previous work." Dr. Parker and Dr. Rice both stated unequivocally that plaintiff was totally disabled with respect to his position as manager of the storage company because the warehouse had a dusty, dirty atmosphere. The hearing examiner specifically found that plaintiff could no longer work in such an atmosphere.

In *Taylor v. Weinberger,* 512 F.2d 664 (4th Cir. 1975), the United States Court of Appeals for the Fourth Circuit held that a Social Security claimant's *prima facie* case of medical disability to perform his customary occupation shifts the burden to the Secretary. *Id.* at 666. The Secretary's burden is two-fold. First, the Secretary must prove that the claimant, given his age, education, work experience, skills and physical shortcomings, has the capacity to perform a specific job. Second, the Secretary must prove that such jobs exist in the national economy. *McLamore v. Weinberger,* 538 F.2d 572, 574 (4th Cir. 1976).

In the instant case, the Secretary has failed to meet either of these burdens. The Secretary has neither identified the specific type of work that the plaintiff could do nor established that such work is available in the national economy. No vocational expert testified as to what jobs if any plaintiff could perform. The findings of the Administrative Law Judge do not contain a single reference to any specific work which plaintiff has the capacity to perform. Rather, the "finding" concerning plaintiff's vocational capacity is merely the broad generalization that plaintiff "can engage in substantial gainful activity as long as those activities are not in a place that has a high degree of dusty or dirty atmosphere." Such unsupported generalization were disapproved in *Hernandez v. Weinberger,* 493 F.2d 1120 (1st Cir. 1974), *cited in Taylor v. Weinberger, supra,* at 668.

Moreover, the record does not contain substantial evidence to support even the broad generalization that plaintiff had the physical capacity to engage in substantial gainful employment in an atmosphere which is not dusty or dirty. The hearing examiner based this finding primarily on two pulmonary function studies showing values sufficient to permit plaintiff to engage in substantial gainful activity, and on Dr. Parker's refusal, from a purely medical standpoint, to unequivocally state that plaintiff was totally disabled from all substantial gainful employment. The Fourth Circuit, however, has soundly rejected the proposition that the Secretary may establish a specific vocational ability solely through medical evidence. *Taylor v. Weinberger, supra,* at 667. The Secretary may establish the vocational capacity of a specific individual only through "particularized proof." *Id.* at 668. The only particularized proof in the instant record is plaintiff's own testimony to the effect that he worked for a brief time as a motel clerk but had to cease because the pain in his legs was too intense. This testimony, in the Court's view, hardly supplies the quantum of evidence required to show actual vocational ability. *See Taylor v. Weinberger, supra,* at 668; *Hernandez v. Weinberger, supra,* at 1123.

Although there is no blanket requirement that a vocational expert appear to supply particularized proof of a claimant's employability, *see McLamore v. Weinberger, supra,* at 575, the Court concludes that when a claimant who has been disabled from his customary occupation testifies that he has made a good faith effort to try other employment and found it beyond his physical capacity, the Secretary is at that point required to engage a vocational expert to testify concerning specific jobs that in such expert's view claimant can perform. Oth-

erwise, a hearing examiner could point to a claimant's attempt to work in a new occupation as evidence of his physical ability to work in that occupation, even if the claimant shortly thereafter found the new position was too demanding.

In fact, that is apparently what the hearing examiner did in the instant case. Were this line of reasoning permissible, however, it would prejudice claimants who attempted to find new employment and conversely would discourage them from doing so. Since the clear intent of the disability statute is to pay benefits only to those who cannot work at all, it would be at cross purposes with the Social Security Act to permit an evidentiary practice in disability hearings that would discourage potential disability claimants from attempting to find a new livelihood. Thus, it was error for the hearing examiner in the instant case to offer particularized proof of plaintiff's alleged employability.

Having determined that there is no substantial evidence to support the Secretary's decision in this case, the Court must decide whether a remand for additional evidence is appropriate. The United States Court of Appeals for the Fourth Circuit considered this issue at length in *Taylor v. Weinberger, supra,* at 668–69. In that case, as here, the Secretary failed to call a vocational expert to meet his burden of establishing the specific vocational ability of the claimant who was disabled from her former employment. Relying on the judicial precedents in this Circuit, the internal regulations of the Social Security Administration, and the express language of 42 U.S.C. § 405(g), the Court refused to remand the case to the Secretary for further proceedings. *Id.* Bound by that decision, this Court declines to remand the instant case and will enter summary judgment in favor of the plaintiff.

An appropriate order will issue.