Floyd R. PHILLIPS, Plaintiff,

v.

DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, Defendant.

No. 78 Civil 213.

United States District Court,
S. D. New York.

June 8, 1978.

---

Floyd R. Phillips, pro se.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant; William J. Hibsher, Asst. U. S. Atty., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff sustained severe injuries in an automobile accident in January 1973. Seven months later, he began to receive disability insurance benefits under Section 223 of the Social Security Act ("Act").[1] In September 1976, after plaintiff had undergone several operations and months of rehabilitation, the Bureau of Disability Insurance in the Social Security Administration determined that plaintiff was no longer disabled within the meaning of the relevant statutory provisions. Disability benefits ceased in August of that year. A year later, an Administrative Law Judge ("ALJ") upheld the termination of benefits after a hearing; this decision was affirmed by the Appeals Council. Plaintiff filed this action seeking review of the Secretary's decision, pursuant to Section 205 of the Act.[2]

The government now moves for a dismissal of the action on the ground that the

---

1. 42 U.S.C. § 423.

2. 42 U.S.C. § 405(g).

Secretary's determination that plaintiff is no longer disabled is supported by substantial evidence and is therefore binding upon this Court.[3] After a careful and searching review of the administrative record the Court concludes that there is substantial evidentiary support for the Secretary's determination and thus the complaint must be dismissed.

Plaintiff was injured when a car in which he was a passenger struck concrete pillars of the West Side Highway in New York City. He sustained multiple lacerations and comminuted fractures of both legs, the left arm and the jaw. He underwent debridement, open reduction, skeletal traction with Steinman pinning, osteectomy of fragments of the left leg, and a tracheostomy. Plaintiff remained in St. Vincent's Hospital for six months; he then was treated at Burke Rehabilitation Center until October 1973. He has since undergone several operations on his legs and has been receiving outpatient treatment at St. Vincent's Hospital clinics for the last several years.

After payments had been made to him for almost three years, it was determined that plaintiff's disability had ceased as of June 1, 1976. The disability examiner based the termination decision upon a June 1 medical report from St. Vincent's Hospital which he summarized as stating: "Claimant is ambulatory without any devises [sic]. His range of motion is good and no other operative procedures planed [sic]. Therefore the claim is ceased as of 6/76 . . . ."[4]

The ALJ upheld the termination of benefits on the basis of hospital records, several medical evaluations and his own observations during the course of the hearing. Dr. Ruggero Situlin, examining plaintiff on behalf of the New York State Office of Vocational Rehabilitation ("OVR"), found that plaintiff was limited in his ability to walk, stand, stoop, kneel, lift, reach and push—although these activities were not to be avoided.[5] Dr. Situlin recommended an orthopedic examination which was performed by Dr. Fred Hochberg, an orthopedic surgeon, one week later.

Dr. Hochberg reported that Phillips' left leg was an inch and a half shorter than his right; that he had full range of motion in both hips; that his range of motion in his right knee was to 110° and in his left knee to 130°; that there was a lack of terminal 10° of dorsiflexion of the right ankle as compared to the left; and that there was a full range of motion of all the joints in the arms. Dr. Hochberg's X-rays revealed healed fractures of the femoral shafts, with mild angulation on the right side. Neither the hips nor the lumbosacral spine revealed gross abnormalities. The doctor's opinion was as follows:

> This patient was evaluated orthopedically at my office today and, based upon my findings, I feel he could walk 2–3 blocks at a time; stand for up to 1 hour at a time; lift up to 30 lbs; sit for unlimited periods; bend at a frequency of 1–2 times per hour. No restrictions on grasping or manipulations.[6]

In January 1977, Phillips was examined by Dr. Hennessy for the OVR, who found full range of movement in flexion and extension.[7] He recommended continued physiotherapy at home with follow-up visits to the St. Vincent's Hospital clinics. The doctor concluded that plaintiff "will require sedentary working conditions."[8]

The question before this Court is whether the Secretary's determination that plaintiff is no longer disabled is supported by substantial evidence. Under the Social Security Act, the term "disability" means:

> (d)(1) . . .
>
> (A) inability to engage in any substantial gainful activity by reason of any

---

3. *Id.*

4. Record at 46.

5. *Id.* at 144.

6. *Id.* at 147.

7. Unfortunately, some of the doctor's report is illegible.

8. Record at 150.

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

. . . . .

(2) For purposes of paragraph (1)(A)—

(A) an individual (except a widow, surviving divorced wife, or widower for purposes of section 402(e) or (f) of this title) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[9]

 The statute is clear in its intendment that the disability benefits program

not become a substitute unemployment or welfare program. The provision focuses on the applicant's *capacity to work*, not on his ability to obtain an actual job.[10] In determining whether or not disability exists, the Court should take into account the objective medical facts, medical opinions based on those facts, the subjective evidence of the claimant, and the claimant's educational background, age and work experience.[11] The Court has already discussed the first two factors.

At the hearing, the ALJ made thorough inquiry into the plaintiff's educational and employment history. Phillips graduated from high school and attended a two-year course at a school of retailing. He has served as a cashier in a supermarket, moved up to supervisor, later served as an assistant manager for a shoe company, a salesman, and just prior to the accident had been a manager of a movie house. During plaintiff's rehabilitation, OVR paid J.O.B. (Just One Break) $875 to help find Phillips a job; these efforts were unsuccessful apparently because Phillips did not know how to type. The ALJ, whose observation of the claimant is entitled to weight,[12] found Phillips to present

a good outward appearance. He walked with the use of two canes. He ·was able to sit throughout the 40-minute hearing

**9.** 42 U.S.C. § 423(d).

**10.** *Lopez v. Sec'y of HEW*, 512 F.2d 1155, 1157 (1st Cir. 1975):

Considerations derived from local hiring practices, employer preferences for physically superior workers, and the claimant's actual chances of being hired are irrelevant in determining disability, and must be disregarded. *Cf.* H.R.Rep.No.544, 90th Cong., 1st Sess., 29–30 (1967); S.Rep.No.744, 90th Cong., 1st Sess., 48–49 (1967), U.S.Code Cong. & Admin.News 1967, p. 2834. As this court has previously stated, the statutory scheme is not an "ancillary unemployment compensation device". *Reyes-Robles v. Finch*, 409 F.2d 84, 86 (1st Cir. 1969). It is *not necessary that the Secretary demonstrate* that a particular claimant would actually be hired, or even that there is a realistic chance of his being so. It is sufficient that he show that there are specific jobs in the national economy which a claimant is *capable* of performing. "Disability" as provided in the Act, although defined by reference to concepts

similar to employability, is actually a term of art looking to the physical and mental capacity to engage in certain activities, regardless of whether the opportunity for any such activity actually exists.

Every Circuit considering the question has reached the same result as that reiterated here . . . . .

*See id.* at 1157 n. 2 (citing cases in six circuits).

At least one Circuit has described this statutory focus on capacity for work rather than availability of work as placing a "very harsh" burden on plaintiffs. *Woods v. Finch*, 428 F.2d 469, 470 (3d Cir. 1970) (per curiam), *quoting Gentile v. Finch*, 423 F.2d 244, 248 (3d Cir. 1970).

**11.** *Bastien v. Califano*, 572 F.2d 908, 911–12 (2d Cir. 1978); *Gold v. Sec'y of HEW*, 463 F.2d 38, 41 n. 2 (2d Cir. 1972).

**12.** *See Deyo v. Weinberger*, 406 F.Supp. 968, 974 (S.D.N.Y.1975).

without displaying any discomfort whatsoever. He demonstrated a clear sensorium, good intelligence and good communicative skills. He is obviously literate. He presented an extremely pleasant facies and agreeable personality and manner with behaviorisms fully appropriate to the occasion.[13]

The medical reports indicate that Phillips has complained of pain in both legs consistently since the accident. At the hearing, he stated that he very much wanted to work, but was not sure if he could:

[ALJ:] Your doctor feels you could do sedentary work, is that right?

[Phillips:] Yes. As I say, I would love to work because I am bored of staying home and I would like to do something constructive if I can . . . .[14]

Based on his observations, the medical record and opinions of several doctors and the employment and educational history of the plaintiff, the ALJ determined that Phillips was able to perform general office clerical work of a sedentary nature. The ALJ found that plaintiff's inability to find such a job was not a function of any disability but rather due to the poor economic conditions extant in New York City.

 Upon a thorough review of the record, the Court finds that there was substantial evidence supporting the decision of the ALJ that plaintiff is capable of performing substantial gainful activity. Generally, once the plaintiff has shown that he is unable to return to his earlier employment, the burden shifts to the Secretary to demonstrate that the plaintiff, given his age, education and work experience, has the capacity to perform a specific job that exists in the national economy.[15] Here, although the ALJ never specifically determined whether plaintiff could return to his prior work, there is ample evidence in the record to support the ALJ's finding that plaintiff can perform the "duties of a general office clerk." The medical records, hearing testimony and ALJ's observations establish that plaintiff is alert, intelligent and able to sit for unlimited periods. Given his age—34—and his work experience as a cashier, supervisor, salesman and manager, it is not unreasonable for the ALJ to conclude—nor has plaintiff ever disputed—that Phillips can perform general clerical duties. This conclusion does not require specific substantiation or breakdown by a vocational expert; clerical work is the type of employment that is within the common knowledge and experience of ordinary men and women.[16] Furthermore, it is entirely proper for the ALJ to take administrative notice that such general clerical work exists in the local economy.[17]

Where there is undisputed evidence in the record that the claimant can sit for unlimited periods, is alert and intelligent and has considerable white collar work experience, sufficient basis exists for the ALJ to conclude that the New York City region has work of a general clerical nature that plaintiff is capable of performing. It is important that plaintiff has nowhere disputed that he could perform such work; indeed, he seems eager to locate it.[18]

The government's motion is granted and the complaint is dismissed.

---

13. Record at 9.

14. *Id.* at 36–37.

15. *Small v. Califano*, 565 F.2d 797, 800 (1st Cir. 1977); *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976); *Montgomery v. Weinberger*, 514 F.2d 1211, 1212 (6th Cir. 1975); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975); *Hernandez v. Weinberger*, 493 F.2d 1120, 1122 (1st Cir. 1974); *Williams v. Mathews*, 439 F.Supp. 1327, 1330 (E.D.Va.1977); *Lightfoot v. Mathews*, 430 F.Supp. 620, 621–22 (N.D.Cal.1977); *Kenney v. Weinberger*, 417 F.Supp. 393, 398 (E.D.N.Y.1976).

16. *Cf. McLamore v. Weinberger*, 538 F.2d 572, 575 (4th Cir. 1976).

17. *Taylor v. Weinberger*, 512 F.2d 664, 668 (4th Cir. 1975); *Hernandez v. Weinberger*, 493 F.2d 1120, 1123 (1st Cir. 1974); *Chavies v. Finch*, 443 F.2d 356, 358 (9th Cir. 1971); *Floyd v. Finch*, 441 F.2d 73, 76 (6th Cir. 1971); *Breaux v. Finch*, 421 F.2d 687, 689–90 (5th Cir. 1970).

18. Although it plays no part in the Court's decision, plaintiff stated at oral argument that OVR will sponsor his enrollment in a two-year management program at night school beginning June 12, 1978.