Ardean CHISM, Plaintiff,

v.

SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.

No. CV 77–2657–F(S).

United States District Court,
C. D. California.

June 28, 1978.

Order Adopting Reports As Opinions of
the Court Aug. 3, 1978.

Ronald L. Sievers, Legal Aid Foundation of Los Angeles, Los Angeles, Cal., for plaintiff.

Andrea Sheridan Ordin, U.S. Atty., Frederick M. Brosio, Jr., Asst. U.S. Atty., Chief, Civ. Section, Daniel G. Clement, Asst. U.S. Atty., Los Angeles, Cal., for defendant.

## REPORT AND RECOMMENDATION, FINDINGS OF FACT and CONCLUSIONS OF LAW

HARVEY A. SCHNEIDER, Magistrate.

This Report and Recommendation is submitted to the Honorable Warren J. Ferguson, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636(b) and General Order No. 104–D of the United States District Court for the Central District of California.

### Statement of Proceedings in this Court

On June 18, 1977 plaintiff, through counsel, filed her Complaint to Review and Set Aside Decision Under the Social Security Act. In this complaint plaintiff seeks a review of the decision of the Appeals Council of the Social Security Administration, in which decision the Appeals Council affirmed the decision of the Administrative Law Judge denying to plaintiff disability insurance benefits under the Social Security Act. The jurisdiction of this Court is sought to be invoked under 42 U.S.C. § 405(g).

On November 21, 1977 defendant filed his Answer to Complaint to Review and Set Aside Decision Under the Social Security Act and appended thereto the administrative record. On January 5 and January 13, 1978 plaintiff and defendant, respectively, filed motions for summary judgment.

On March 14, 1978 the parties' motions for summary judgment came on for oral argument. Following oral argument, counsel for each party was given up to and including April 4, 1978 within which to submit additional points and authorities and

other documentation to the Court. On April 4, 1978 plaintiff and defendant filed supplemental memoranda of points and authorities with the Court. The case now stands submitted.

### Statement of Administrative Proceedings

On September 17, 1975 plaintiff filed an application for disability insurance benefits under the provisions of the Social Security Act. This application was denied for the reason it was determined plaintiff was not disabled within the meaning of the Act. On November 17, 1976 a hearing was held before an Administrative Law Judge with respect to plaintiff's application for benefits. On November 30, 1976 the Administrative Law Judge rendered a decision denying benefits to plaintiff. The Appeals Council affirmed the decision of the Administrative Law Judge on April 13, 1977.

### Applicable Law

The scope of this Court's review in this case is quite clear. Thus, this Court must determine if the findings of the Secretary are supported by substantial evidence. If they are, those findings are conclusive. *Chavies v. Finch*, 443 F.2d 356 (9th Cir. 1971); *Harris v. Richardson*, 468 F.2d 1260 (9th Cir. 1972); *Harmon v. Finch*, 460 F.2d 1229 (9th Cir. 1972). This is so even if there is conflicting evidence in the record, based upon which the Secretary could have reached a contrary conclusion. *Rhinehart v. Finch*, 438 F.2d 920 (9th Cir. 1971).

The phrase "substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It seems unnecessary to state that the "substantial evidence" test has the effect of greatly limiting the scope of this Court's review of the Secretary's decision in a Social Security case. Thus, even if this Court believes plaintiff should have been awarded disability benefits by the Secretary, it must sustain the Secretary's decision if it is supported by substantial evidence.

It is axiomatic that plaintiff had the burden of establishing she was entitled to benefits under the Act (*Rhinehart v. Finch, supra; Hart v. Finch*, 440 F.2d 1340 (5th Cir. 1971)), i. e., that she was "disabled" within the meaning of the Act. The term "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." (42 U.S.C. § 423(d)(1))

The definition of "disability" is further qualified by the requirement that "an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." (42 U.S.C. § 423(d)(2)(A))

### Plaintiff's Claims of Disability

In her application for disability insurance benefits plaintiff claimed she was disabled due to "back injury and arm." (Tr. 42) At the administrative hearing plaintiff claimed she was disabled due to other conditions (see discussion, *infra*).

### Evidence Adduced at the Administrative Hearing

At the administrative hearing plaintiff testified that she was fifty-two years old and completed the eleventh grade in school. Plaintiff's work history included the follow-

ing: cooking in a cafeteria and in a private home; maid in a hotel (where plaintiff cleaned the rooms as well as the restrooms, vacuumed, made beds, etc.); bus work in a restaurant; part time cook in a nursery school; lining the insides of airplanes (by use of air motors, pneumatic guns and heat for glueing); and operating a shirt machine in a cleaning and laundry establishment. Plaintiff stopped working at the latter job when she was injured in an accident. When she was employed at the laundry, plaintiff was required to be on her feet all day and also did some lifting. (Tr. 22–26)

In 1972 plaintiff was involved in an accident. Her back and shoulders were injured in that accident. The accident occurred when she "was lifting the laundry bags out of this commercial washer . . . and reached over the tray to get the bags out and it felt as if something snapped in my back and also my shoulders." Plaintiff testified that although both shoulders were involved, her "right shoulder is more severe than . . . . [her] left shoulder." (Tr. 26–27) Plaintiff testified that the problem with her back and shoulders remained about the same, although at times they are worse and at times a little better. Plaintiff testified, however, that "every so often I get to the place where I can't hardly walk." She testified that this results from "a grab like thing" which occurs in her back and which "flares the whole shoulder up." Plaintiff testified that she had this problem almost constantly. At the time of the administrative hearing plaintiff was under the medical care of Dr. Rubin at the Washington Main Family Medical Group. Plaintiff testified that she was taking a number of different medications at the time the administrative hearing was held. (Tr. 30–31)

Plaintiff testified that due to her back problem, she is unable to sit for more than thirty minutes at a time. After this period of time she is required "get up and move around." She testified that she was not very able to move around in her chair and continue sitting. Plaintiff testified that she can stand twenty to twenty-five minutes, after which she begins experiencing problems with both of her knees. The problem is a burning in the kneecaps. Plaintiff also testified that she has a problem walking and that she cannot walk over a block. The reason for this is that after she walks that distance it feels "like my whole chest area comes out or something." Plaintiff described the feeling as "pressure" in her chest. She also stated that after she walks one block her knees start hurting and she becomes very tired. Plaintiff always utilizes a cane when she walks. She uses the cane in order to protect her from falling down, which she has done on occasion. (Tr. 31–33) Plaintiff fell because her knee gave way. She had fallen down several times. Plaintiff testified that her left knee has a tendency to give way more than her right knee. Plaintiff stated that she had had trouble with her knees ever since she fell. Plaintiff testified that the problem with her left shoulder is not as severe as it was before, although she still experienced some pain in it. Plaintiff described the pain as "a sharp pain" that "just shoot (sic) through my shoulder." Plaintiff experienced such pain even without activity. She also testified that she experienced constant pain in her right shoulder. Plaintiff indicated that she experiences pain in her right shoulder on engaging in activity. She also stated that she was unable to hold anything and that if she tries to pick up something she will drop it. (Tr. 34–35) Plaintiff also testified that she is unable to turn the cap to a jar with her right hand; plaintiff is right handed. Plaintiff also testified that she was unable to raise her arm over shoulder level. She also testified that she is able to extend her arms a little way in front of her "as far as holding things and working with things in front of" her. (Tr. 35–36)

Plaintiff testified that her husband did almost all of the housework and that she did very little of it. She testified that she is able to cook, but only when she feels like it. Plaintiff's husband does the shopping, although she accompanies him once in a while if she is physically up to it. Her husband also does the laundry and helps wash the dishes. (Tr. 37–38)

During a typical day plaintiff arises and if she is physically able to do so, will have a cup of juice and a poached egg. She will then read the Scriptures, go back to bed and stay there most of the day. Plaintiff testified she does this because she feels better when she is lying down than when she is sitting. Plaintiff then gets up for lunch, although on some days she does not have any lunch. She then goes back to bed and arises again when her husband comes home later in the afternoon. Sometimes plaintiff stays up during the evening hours, but on other occasions she returns to bed and stays there. Plaintiff also testified that she suffers from dizzy spells, although not every day. Plaintiff testified that she had such spells three to four times a week and that they last ten to fifteen minutes. These spells seem to be related to "getting up" at times. Plaintiff also testified that after she stays still for a while, the dizzy spells disappear. Plaintiff testified that it is positional changes which mostly bring on her dizzy spells. (Tr. 39–40)

### Summary of Medical Evidence

In a report which appears on page 64 of the administrative record, it is stated that plaintiff pulled her shoulder while lifting. She was diagnosed as having osterial adhesive capsulitis of the right shoulder. The same report noted that plaintiff had experienced a stiff right shoulder for three weeks and that it had not responded to treatment. A shoulder arthrogram was, however, within normal limits. Subsequently, plaintiff's shoulder was manipulated under anesthetic, after which it was reported she had good range of motion. (See also Tr. 65) The records of Marina Mercy Hospital, at which plaintiff's shoulder was manipulated under anesthetic, also reveal that plaintiff denied high blood pressure, a heart condition, shortness of breath or asthma. (Tr. 65) It was also reported that plaintiff's neck was straight with no scoliosis and that her pelvis was level. Flexion of the right shoulder was 145°; abduction 115°; external rotation 50% of normal; internal rotation 45° with pain on motion. (Tr. 66)

On October 25, 1972 Dr. Freedman, a radiologist, reported after examination that plaintiff's chest was normal radiographically. (Tr. 70)

In a report dated November 24, 1975 Dr. Brandwein, an orthopedist, stated that plaintiff complained of constant severe pain in the low back and constant left shoulder pain. Plaintiff also stated she was under treatment for hypertension and that she experienced headaches which were painful and disabling. On examination the doctor noted considerable weakness of grip of the right hand clinically; the deltoid, biceps and triceps were moderately weak compared to the left. (Tr. 72)

All movements of plaintiff's neck were carried out fully and were bilaterally symmetrical. There was diffuse tenderness of plaintiff's right shoulder, although no atrophy of the deltoid or right arm musculature was noted. No local tenderness was present over the bicipital groove. Shoulder measurements were as follows: flexion 150° on the right and 170° on the left; abduction 110° on the right and 170° on the left; internal rotation 50% on the right and full on the left. All shoulder movements were painful and guarded.

There was normal alignment with no pelvic tilt or scoliosis in plaintiff's back. She indicated the lumbosacral region as the area of pain. There was tenderness in this region, but no spasm. Sacroiliac and sciatic notches were pain free. Back movements revealed flexion to 12″ with low back pain and extension 20° with similar pain. Side bending was 25° right and left with slight back pain and rotation was 40° right with low back pain and 40° left, pain free. Straight leg raising sitting was positive at 90°/negative; supine positive at 30/60 with pain felt in the low back. This was slightly duplicated by double-knee-thigh flexion while supine. Squat test was allowed 75% of normal, but then restricted due to complaint of back pain.

There was diminished sensation in the right lateral forearm and the entire right lower extremity compared to the left to sharp touch. Remainder of sensation was

intact in the extremities. There was slight right arm and forearm atrophy.

X-rays of the lumbar spine revealed normal alignment and contour with no arthritis, disc space narrowing or other bony abnormality. Shoulder films revealed no arthritis, loose bodies, abnormal soft tissue densities or other abnormality of the bone structure. The AC joint was similarly without arthritis.

Dr. Brandwein diagnosed plaintiff as having chronic shoulder disability, with stiffness and pain, and chronic low back strain. He opined that plaintiff was partially disabled, but was capable of doing work of a light nature with limited use of the right arm. Plaintiff's back appeared to the doctor to be minimally disabling and there were minimal objective findings to confirm her complaints of back pain. She required medications for discomfort; however, no intensive treatment or surgery appeared indicated.

In filling out the work activity evaluation with respect to plaintiff, Dr. Brandwein stated that plaintiff could engage in climbing and balancing activities, but not in frequent stooping, crouching or bending. Dr. Brandwein stated that plaintiff was able to stand, walk or sit four to six hours in an eight hour day. She was also able to engage in all activities with her hands, except reaching above shoulder level with her right arm. Moreover, Dr. Brandwein stated that plaintiff could occasionally lift and carry twenty pounds, could frequently lift and carry ten pounds, but could continuously lift no weight. There were no restrictions placed upon plaintiff's capacity to work around moving machinery, heights, noise or dust. (Tr. 75)

In a report dated November 3, 1976 Dr. Rubin stated that while plaintiff complained of low back and right shoulder pain, her heart and lungs were not remarkable. Moreover, a pelvic examination was negative. Tenderness was noted on deep palpation of the left knee and right shoulder. X-rays revealed no significant changes indicative of arthritis; Dr. Rubin noted that plaintiff's back pain had decreased some-

what. Plaintiff was diagnosed as having chronic low back syndrome; chronic cervico-dorsal and right shoulder sprain; lumbar myocitis; arthritis left knee; and hypertension.

Dr. Rubin stated that plaintiff was unable to do any work requiring strenuous or significant use of the back and right shoulder. On physical examination slight limitation of the range of motion of the right shoulder with pain was noted. There was also tenderness over the anterior rotator cuff as well as moderate limitation of motion of the neck. There was also tenderness over the level of C6, more on the right. There was marked limitation of motion of the lumbar spine with increasing lumbar lordosis. Neurologic examination was negative. Straight leg raising to 80° was negative bilaterally. Range of the hips was normal. X-rays revealed normal right shoulder, minimal degenerative spondylosis-lumbar spine. An additional diagnosis of degenerative spondylosis of the lumbar spine, chronic lumbosacral strain and tendonitis of the right shoulder was made. Dr. Rubin stated that plaintiff's disability was permanent and stationary, was moderately severe, and was subject to exacerbations when exposed to stress. The doctor opined that further treatment would not be beneficial. (Tr. 83)

### Discussion

This case presents a frequently recurring problem in Social Security cases, namely, to what extent is an Administrative Law Judge permitted to use administrative notice as the basis for his vocational findings. As will be noted below, the cases are somewhat difficult to reconcile in this area. Since this case requires the issue to be addressed, the Magistrate will undertake to set forth his understanding of the applicable authorities and to reconcile them where possible.

In this case the Administrative Law Judge made the following statements concerning plaintiff's ability to engage in work activities:

". . . it is concluded that claimant is able to engage in sedentary work without overhead use of the right arm. Such work does exist in assembly work in electronics, plastics, and kindred lines. . ." (Tr. 12)

■ It is obvious from the quoted statement of the Administrative Law Judge that he concluded plaintiff did not have the ability to perform any of her former occupations. This conclusion follows from the principle of law that the Secretary need not be concerned whether a claimant is able to engage in other work that exists in the national economy unless the claimant is disabled for his previous occupation. *Meneses v. Secretary of Health, Education and Welfare*, 143 U.S.App.D.C. 81, 442 F.2d 803 (1971). Moreover, the fact that the Administrative Law Judge (and thus the Secretary) impliedly concluded plaintiff could not return to her previous occupation shifted the burden to the Secretary to prove other jobs existed in the national economy which plaintiff could perform. *Meneses v. Secretary of Health, Education and Welfare, supra.*

In the present case the question presented is whether the Secretary sustained his burden of proof. More specifically, the question presented is whether the findings that plaintiff "is able to engage in sedentary work without overhead use of the right arm" and that "such work does exist in assembly work in electronics, plastics and kindred lines . . ." are sufficient to permit this Court to sustain the Secretary's decision.

■ The Magistrate is of the opinion that the Administrative Law Judge's (and thus the Secretary's) vocational findings are insufficient and that this case must be remanded to the Secretary for the purpose, *inter alia*, of making a proper finding with respect to plaintiff's ability to engage in substantial gainful activity. The reason for the Magistrate's conclusion is that there is simply no evidence in the record based upon which this Court can review the Secretary's determination that plaintiff retains the residual functional capacity to engage "in assembly work in electronics, plastics, and kindred lines." Stated another way, since the record is absolutely devoid of a description of the kind of activities a person engaged in assembly work of the kind described is required to perform, there is simply no way for the Court to determine if the Secretary's decision that plaintiff can engage in such activities (consistent with her age, education, experience and physical condition) is supported by substantial evidence.[1]

The Magistrate is, of course, aware of *Chavies v. Finch*, 443 F.2d 356 (9th Cir. 1971), a case in which the court stated as follows:

"The testimony of the vocational expert is substantial evidence that Chavies is capable of engaging in substantial gainful activity which exists in the national economy. Further, given the testimony of the medical experts that Chavies could perform light work, the Secretary would be permitted to take administrative notice that light work exists in the national economy. See *Breaux v. Finch*, 5 Cir., 1970, 421 F.2d 687." (443 F.2d at p. 358)

The above-quoted language in *Chavies* has been frequently relied upon by courts in this Circuit. For example, in *Kerr v. Richardson*, 387 F.Supp. 361 (E.D.Cal.1974) the court stated:

"This medical evidence taken in conjunction with plaintiff's age, forty-seven years, his education, two years of high school, and his work experience indicates that plaintiff is capable of finding substantial gainful activity. The Secretary

1. The Magistrate is aware that in *McLamore v. Weinberger*, 538 F.2d 572, 575 (4th Cir. 1976) the court stated that "the conclusion that McLamore can engage in a number of light manual and semi-skilled jobs is within the common knowledge and experience of ordinary men, and requires no substantiation by a vocational expert." For reasons which will be made to appear subsequently, the Magistrate has grave doubt as to whether this statement of the court is a sound principle of law. In any event, the Magistrate believes that the duties required to be performed by an electronics or plastics assembler are not so universally known as to make the decision in *McLamore* applicable to this case.

need not identify a particular job or employment opportunity for which the plaintiff would qualify, the Secretary need only take administrative notice of the fact that light work exists in the national economy. *Chavies v. Finch, supra,* 443 F.2d at 358." (387 F.Supp. at p. 363)

See also *Gray v. Mathews,* 421 F.Supp. 364 (N.D.Cal.1976); *Lenhart v. Weinberger,* 400 F.Supp. 1093 (D.Nev.1975); and *Kroeneke v. Richardson,* 363 F.Supp. 891 (D.Or. 1973). Indeed, in the latter case the court stated:

"The Secretary was permitted to take administrative notice of light jobs claimant can do. *Chavies v. Finch,* 443 F.2d 356 (9th Cir. 1971). . . ." (363 F.Supp. at p. 893)

*Kerr, Gray, Lenhart* and *Kroeneke* would appear to be correct if they are interpreted to stand only for the proposition that once it is established a claimant cannot return to his former job, and it is also established that there are specific jobs he can do, the Secretary may take administrative notice that jobs of this kind exist in the national economy. If, however, *Kerr* and the other cited cases are meant to stand for the proposition that the Secretary can take administrative notice that there exist in the national economy jobs plaintiff can perform, then it appears to the Magistrate these cases are clearly incorrect, at least in a case, such as the present one, where the evidence fails to reveal the plaintiff can engage in virtually unlimited work activities of a light and sedentary nature. Cf. *Breaux v. Finch, supra.*

In *Lightfoot v. Mathews,* 430 F.Supp. 620 (N.D.Cal.1977), a case which the Magistrate believes is correct both in terms of analysis and result, the court stated:

"To circumvent this lack of evidence [as to what was meant by the Administrative Law Judge when he concluded the claimant had the residual functional capacity to engage in a wide variety of light and sedentary jobs], the Government maintains that the Secretary may take administrative notice that 'light' jobs exist in significant numbers, and that such conclusions as are within the common knowledge and experience of ordinary men require no substantiation by a vocational expert. See, e. g., *Chavies v. Finch,* 443 F.2d 356 (9th Cir. 1971); *McLamore v. Weinberger,* 538 F.2d 572 (4th Cir. 1976). "The court is unable to agree. It *might* agree 'to the extent that once evidence of capacity to do specific jobs is put forward and the jobs named are commonly known to "exist in the national economy" it is permissible for the Secretary to take notice of this fact,' but the Secretary has not made the necessary preliminary showing of capacity to perform specific work. . . .

"A finding of capacity to do 'light work' will not do. Plaintiff's capacity to perform work must be assessed in terms of her own particular pattern of ailments and abilities, including, age, education, work experience and impairments. This requires a finding of capacity to work which is expressed in terms of specific kinds of jobs, and not simply in terms of catch-all categories susceptible to subjective construction. The court may have an idea of what it considers to be 'light work,' but it has no idea as to whether the Secretary shares the same conception, and even less does it have an ability to match against so vague a finding the evidence adduced in the record.

"More fundamental than the inherent vagueness of the Secretary's conclusion is his failure to bear his burden of proof. Where the plaintiff shows inability to return to her former work, the Secretary must assume the burden of coming forward with evidence as to the skills of the particular claimant and the availability of specific jobs which correspond with those skills. (Citation omitted.)

" . . . .

"Were the Secretary permitted to rely upon 'administrative notice' to establish that a claimant can perform certain work and that such work exists, then the burden of the Secretary would be lightened significantly, for then he needs to prove

less. In such cases, the mere existence of testimony in disagreement with the plaintiff's medical claims generally will be sufficient to require the court to grant summary judgment for the Secretary. Such disagreement will always be found. Applications for disability benefits, presumably, never are denied where all medical examiners agree; it is only when medical testimony conflicts that a case such as this one comes before the court. Therefore, to allow the Secretary to prove his case by administrative notice of key particulars is to rubber-stamp his determination, and to make a sham of a claimant's right of review.

"The court is not interested in reviewing the Secretary's findings of fact, nor in extending benefits to persons not qualified to receive them, nor in placing artificial obstacles in the way of just and speedy adjudication of claims. But the court is concerned with ensuring that coverage is liberally extended in keeping with the broad remedial purposes of the Social Security Act. To this end, it must require that the Secretary *prove* each element indicative of lack of coverage.

"The court is aware of the decision of the Court of Appeals for the Ninth Circuit in *Chavies v. Finch, supra.* But two considerations lead the court to regard *Chavies* as inapplicable to the facts here.

"First, the Court of Appeals' statement that the Secretary would be permitted to take administrative notice that light work exists in the national economy is dictum, as there is nothing in the *Chavies* opinion to indicate that the Secretary did, in fact, take administrative notice of anything.

"Second, the *Chavies* case is distinguishable from the case at bar in that the Secretary had the advantage of having before him testimony of a vocational expert that certain named jobs could be performed by the claimant. The total absence of such evidence or any other evidence establishing what specific kinds of jobs plaintiff can perform is a critical defect." (430 F.Supp. at pp. 621–622)

*Garrett v. Richardson,* 471 F.2d 598 (8th Cir. 1972) also buttresses the Magistrate's conclusion that the Secretary's vocational findings in the present case are deficient. In *Garrett,* where no vocational expert testified, it was indicated in a medical report that the plaintiff could do light to moderate work. In rejecting this opinion as a proper basis for the conclusion that plaintiff was not disabled, the court, quoting from *Clemochefsky v. Celebrezze,* 222 F.Supp. 73, 78 (D.C.Pa.1963), stated as follows:

"'Once proper medical evidence, buttressed by subjective evidence from claimant has shown a sufficiently severe impairment, it must be determined if such impairment, plus claimant's education and work status, preclude any substantial, gainful activity. (Citation omitted.) In cases of this kind, where the claimant alleges inability to engage in substantial, gainful activity, and his personal physician, the man in whose charge claimant has entrusted his health, claims otherwise, if examining physicians are to dispute this contention, they must give the medical basis for their opinions. It is not sufficient to say that a man suffers some form of physical impairment but can do 'light work'. It must be shown medically that he can perform the physical activities certain jobs require without serious aggravation of present physical impairments or to general health. Otherwise, the Hearing Examiner's findings would amount to pure speculation.'" (471 F.2d at pp. 602–603)

See also *Goodwin v. Gardner,* 250 F.Supp. 454 (N.D.Cal.1966).

In many ways the present case is strikingly similar to *Taylor v. Weinberger,* 512 F.2d 664 (4th Cir. 1975). In *Taylor* a physician had stated that plaintiff could do light and sedentary work, and a hospital had recommended that plaintiff receive vocational rehabilitation. The Administrative Law Judge concluded plaintiff could sit, stand, walk about and use her arms and hands in light and sedentary work such as a key punch operator or telephone operator. The Administrative Law Judge also con-

cluded such jobs existed in the area in which plaintiff resided. In concluding the Administrative Law Judge's findings were defective, the court stated:

"A third source is advanced by the Secretary to supply the needed proof of employability: he may administratively 'notice' that Mrs. Taylor possesses the *specific* vocational capacity for the jobs of keypunch and telephone operator. But while this and other circuits have agreed that the Secretary may administratively notice the existence of such jobs in the economy, facts pertaining to the capacity of a specific individual can be supplied only by particularized proof. (Citations omitted.) To allow the Secretary to 'notice' a fact that is both complex and disputed would undermine an explicit congressional direction to adjudicate disability claims on an individual case-by-case basis. It is clear that the Secretary's finding of vocational capacity is supported neither by substantial evidence in the record nor by any facts susceptible of administrative notice. The entry of summary judgment in [defendant's] favor must therefore be vacated." (512 F.2d at p. 668)

See also *Hernandez v. Weinberger*, 493 F.2d 1120 (1st Cir. 1974); *Garrett v. Richardson*, 363 F.Supp. 83 (D.S.C.1973).

■ The Magistrate believes the confusion in some of the cases with respect to the issue under discussion stems from a failure to distinguish between taking administrative notice of the availability of certain jobs in the national economy vis a vis taking administrative notice of the claimant's ability to perform the duties required of specific jobs. If the Secretary could take administrative notice that a claimant can engage in light and sedentary work, without there being any specification in the record as to the activities required to be engaged in in such work, a court would be effectively

denied the opportunity of reviewing the Secretary's decision.[2] Simply stated, while "The court may have an idea of what it considers to be 'light work,' . . . it has no idea as to whether the Secretary shares the same conception, and even less does it have an ability to match against so vague a finding the evidence adduced in the record." (*Lightfoot v. Mathews, supra*, at p. 621) It is for this reason the Magistrate believes *Lightfoot, Taylor,* and *Hernandez* are all correct in requiring the Secretary, once the burden of proof is shifted to him, to produce evidence of the skills and residual capacity of the plaintiff (given his age, education, and experience) and to match those skills to specific jobs which exist in the national economy. Once this is done, the Secretary may then take administrative notice that jobs of the kind described exist in the national economy, if their existence is a commonly known fact.

In the present case the Administrative Law Judge did more than take administrative notice that light work exists in the national economy which plaintiff could perform. In fact, the Administrative Law Judge stated that "claimant is able to engage in sedentary work without overhead use of the right arm" and that "Such work does exist in assembly work in electronics, plastics, and kindred lines . . . " (Tr. 12) For the reasons stated above, the Magistrate believes the Administrative Law Judge's findings are deficient since there is absolutely no way this Court, not being made aware by the record as to the duties required to be performed by one engaged in the work of electronics or plastics assembling, can determine whether plaintiff is able to engage in such activities given his age, education, experience and physical condition. *Taylor v. Weinberger, supra.*

There is another aspect of this case which the Magistrate has found troubling. Thus,

---

**2.** In a case in which the record clearly reflects that, in spite of a given impairment or impairments, the claimant is able to engage in virtually unrestricted light and sedentary work, it may be permissible for the Secretary to take administrative notice of the claimant's ability so to do. But where, as in the present case, the record indicates that the claimant's ability to engage in sedentary activity is restricted, the Magistrate believes it is improper for the Secretary to take administrative notice that the claimant can perform light and sedentary work.

the Magistrate has some doubt as to whether the Administrative Law Judge's decision contains a specific enough reference to plaintiff's claim of pain and a rejection of that claim as a basis of disability.

In his decision the Administrative Law Judge made the following statements:

"Claimant complains vaguely of left knee pain on weight bearing but no medical evaluation has indicated any lower extremity impairment and there is no basis for the use of the cane. . . . "

" . . . .

"It is believed that a realistic assessment of the extent of restriction of activity imposed by the claimant's impairment must be based on (1) the objective clinical and laboratory findings of dysfunction and (2) the presumed severity of the associated symptoms. In other words, the mere fact that the claimant may have a particular impairment, is by itself, of little significance in the absence of demonstrable evidence of loss of functional efficiency or definite indications that the condition produces such subjective distress that continuing serious curtailment of physical and/or mental activities would result. It must be recognized that the element of exaggeration of symptoms, either conscious or unconscious, plays a prominent role in many 'disability' cases, particularly those in which monetary compensation is involved. In this connection, the Administrative Law Judge should rarely be compelled to rely almost solely on the claimant's own self-serving statements to establish a medically demonstrable impairment of the degree of severity and continuity that would make this individual unable to engage in any substantial gainful activity. "Claimant's bedridden status is thoroughly unsupported by the medical evidence of the case. . . . " (Tr. 12)

The Magistrate believes it is settled in this Circuit that the Secretary in a disability case is required to consider the claimant's testimony with respect to pain, if medical evidence will support the claim, and then make specific findings as to the claimant's credibility. In other words, when an allegation of pain has been made by the claimant, it is the duty of the Administrative Law Judge to find upon this issue. *Mark v. Celebrezze,* 348 F.2d 289 (9th Cir. 1965); *Goodwin v. Gardner,* 250 F.Supp. 454 (N.D.Cal.1966); *Roberts v. Califano,* 439 F.Supp. 188 (E.D.Pa.1977). In the present case the Magistrate has some doubt as to whether the Administrative Law Judge's above quoted statements satisfy the specificity requirement of *Mark, supra,* and the other cited cases. It may be that the Magistrate would not recommend a remand in this case if the Secretary's failure to make a specific finding as to plaintiff's claim of pain was the only defect disclosed by the record. Since, however, the Magistrate believes this case must be remanded to the Secretary because of the latter's failure to make proper vocational findings, it is further believed that, on remand, more specific findings should be made as well with respect to plaintiff's claim of pain.

In light of the foregoing, IT IS RECOMMENDED that the Court adopt the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

The Report and Recommendation of the Magistrate is adopted as the Findings of Fact of the Court.

## CONCLUSIONS OF LAW

### I

The Court has jurisdiction of the parties to this action.

### II

The Court has jurisdiction of this action under 42 U.S.C. § 405(g) as amended.

### III

This case should be remanded to the Secretary of Health, Education and Welfare for the purpose only of permitting the Secretary to make an additional finding or findings as to (1) whether there exists in

the national economy jobs which plaintiff can perform given her age, education, experience and medical condition and (2) whether plaintiff is disabled due to pain standing alone, or in conjunction with her other conditions.

### IV

Both the plaintiff's and the defendant's motions for summary judgment should be denied.

### V

To the extent these Conclusions of Law also contain Findings of Fact, they shall be deemed incorporated within the Findings of Fact.

Dated: May 5, 1978

### FINAL REPORT and RECOMMENDATION

A Report and Recommendation of the undersigned Magistrate and a Proposed Order Remanding Case were served on the parties herein on May 12, 1978, as provided in General Order No. 104–D of this Court.

On June 1, 1978 there was filed Defendant's Objections to Magistrate's Recommendation (hereinafter referred to as "Objections"). Since nothing contained in the Objections has caused the Magistrate to alter his original recommendation to the Court, the Magistrate reaffirms that recommendation. Defendant's Objections do require, however, several additional comments by the Magistrate.

■ In his Objections defendant recognizes, as did the Magistrate in his Report and Recommendation, that a difference exists between taking administrative notice of an individual's ability to perform light or sedentary work vis a vis taking administrative notice that such work exists in significant numbers in the national economy. In this connection the defendant states as follows:

". . . Probably, a majority of the courts, however, have rejected taking notice of *ability* to work, recognizing that there must be evidence of record to establish a residual capacity for work other than a claimant's former work. (Citations omitted.) Defendant submits, however, that courts following the better reasoned view have continued to recognize the propriety of taking administrative notice of the fact that work consistent with the claimant's established functional capacity *exists* in significant numbers in the national economy. (Citations omitted.) It is this latter type of administrative notice that was taken here, and which defendant submits is entirely proper." (Emphasis in original) (Objections, p. 2)

If this were a case in which the record contained evidence of plaintiff's functional ability to engage in work activities (considering her age, education and experience), *as well as* evidence of the job description or duties of specifically identified sedentary jobs which were matched to plaintiff's ability, the Magistrate would have no difficulty in agreeing with defendant's contention that the Administrative Law Judge (and the Secretary) could then take administrative notice of the existence of such jobs in the national economy. The trouble with defendant's position is that this is not such a case. Rather, in this case the Administrative Law Judge made the following findings:

". . . it is concluded that claimant is able to engage in sedentary work without overhead use of the right arm. Such work does exist in assembly work in electronics, plastics, and kindred lines . . ." (Tr. 12) [1]

"The Magistrate is of the opinion that the Administrative Law Judge's (and thus the Secretary's) vocational findings are insufficient and that this case must be remanded

---

1. It is interesting to note that the defendant asserts that the Administrative Law Judge engaged in a superfluous act in stating that sedentary work exists in the national economy in "electronics, plastics, and kindred lines" since, according to the defendant, it would have been sufficient for the Administrative Law Judge to have simply administratively noticed that sedentary work exists in the national economy. (Objections, p. 8)

to the Secretary for the purpose, *inter alia,* of making a proper finding with respect to plaintiff's ability to engage in substantial gainful activity. The reason for the Magistrate's conclusion is that there is simply no evidence in the record based upon which this Court can review the Secretary's determination that plaintiff retains the residual functional capacity to engage 'in assembly work in electronics, plastics, and kindred lines.' Stated another way, since the record is absolutely devoid of a description of the kind of activities a person engaged in assembly work of the kind described is required to perform, there is simply no way for the Court to determine if the Secretary's decision that plaintiff can engage in such activities (consistent with her age, education, experience and physical condition) is supported by substantial evidence." (Report and Recommendation, p. 553) *A fortiori,* there is no way for the Court to determine if the Secretary's decision that plaintiff can engage in "sedentary work" is supported by substantial evidence. Simply stated, while "The court may have an idea of what it considers to be 'light work,' . . . it has no idea as to whether the Secretary shares the same conception, and even less does it have an ability to match against so vague a finding the evidence adduced in the record." (*Lightfoot v. Mathews,* 430 F.Supp. 620, 621 (N.D.Cal. 1977).

In his Report and Recommendation the Magistrate conceded that "In a case in which the record clearly reflects that, in spite of a given impairment or impairments, the claimant is able to engage in virtually unrestricted light and sedentary work, it may be permissible for the Secretary to take administrative notice of the claimant's ability so to do." (Report and Recommendation, p. 556, fn. 2) In his Objections the defendant asserts that the decision in *Lien v. Cohen,* 432 F.2d 1222 (9th Cir. 1970) "refutes the Magistrate's suggestion that a claimant must have a 'virtually unrestricted' capacity (see Report, p. 556, fn. 2) for light or sedentary work in order for administrative notice to be permissible . . . ." (Objections, p. 4) In making this assertion

the defendant relies on the following brief quote from *Lien* :

> "There is sufficient evidence in the record to indicate the claimant can engage in substantial gainful work. While unable to perform arduous tasks, there is testimony such as to indicate employability in many positions not involving strenuous activity." (432 F.2d at p. 1223)

It is the Magistrate's view that *Lien* does not advance the defendant's cause at all. Initially, it must be noted that *Lien* does not appear to involve at all the doctrine of administrative notice, since there is nothing in the opinion to indicate the Secretary took administrative notice of anything. Second, the opinion in *Lien* is silent as to the nature of the "sufficient evidence in the record to indicate that claimant can engage in substantial gainful work" and as to the "testimony . . . [indicating] employability in many positions not involving strenuous activity." If, for example, the "testimony" to which the court in *Lien* alluded was the testimony of a vocational expert, it is clear the decision in *Lien* is inapposite to the present case.

■ Contrary to the defendant's apparent interpretation of the Magistrate's Report and Recommendation, it is not the Magistrate's position that a vocational expert must be called to testify every time it is determined a claimant cannot return to his previous job. While it is the Magistrate's opinion that vocational evidence in some form (i. e., a description of the duties of specifically identifiable jobs) must be presented and matched to the individual claimant's age, education, experience and functional restrictions, it does not necessarily follow that such evidence must always, or even ever, be in the form of testimony of a vocational expert. For example, it may be proper for the Administrative Law Judge to examine a book containing job titles and descriptions, to spread on the record the job descriptions (i. e., duties) of specifically identified jobs, and to conclude the claimant had the ability to perform all of the duties required of such jobs.

The true nature of the defendant's position in this case, a position which the Magistrate believes is clearly erroneous, is reflected in the following quotations from the Objections at pp. 6–8:

"The court is well aware that many thousands of disability hearings are conducted by the Social Security Administration every year. The Supreme Court has recognized the immensity of this responsibility and the fairness of the administrative process. See *Richardson v. Perales*, 402 U.S. 389 [91 S.Ct. 1420, 28 L.Ed.2d 842] (1971); *Mathews v. Eldridge*, 424 U.S. 319 [96 S.Ct. 893, 47 L.Ed.2d 18] (1976). Typically, an administrative law judge will conduct several hundred disability hearings each year, many of which involve testimony from vocational experts. In this manner, an administrative law judge becomes familiar with what types of jobs fall within the categories of 'light' work or 'sedentary' work, in what industries or fields of work such work categories exist, and what physical and mental capabilities are required to perform such jobs, since vocational experts traditionally use work categories and job descriptions from the Department of Labor's *Dictionary of Occupational Titles.* See *Chavies v. Finch*, [443 F.2d 356, 9th Cir.] *supra; Rose v. Cohen*, 406 F.2d 753 (6 Cir., 1969). From hearing many vocational experts give testimony as to what jobs persons with various impairments can or cannot perform, and in what vocational fields such jobs occur, administrative law judges naturally accumulate a background of knowledge concerning job duties and exertional requirements, and the types and degrees of functional limitations which permit or preclude substantial gainful activity.

"When an administrative law judge conducts a disability hearing involving an individual with similar impairments to a previous claimant, and the administrative law judge has heard a vocational expert testify that the prior claimant could engage in work other than his former work, it is a proper exercise of administrative judgment to conclude that the current individual, with similar impairments, age, education and vocational background, could perform light or sedentary work similar to that identified in the prior hearing. This is particularly so where the medical evidence in the current case supports a finding of residual work capacity for the individual and the administrative law judge is only noticing the existence of light or sedentary work in the economy which is consistent with the individual's abilities. The taking of administrative notice on behalf of the Secretary is consistent with the rule of law that not only his findings of fact but also inferences reasonably drawn therefrom are conclusive where they have a substantial basis in the record. . . ."

■ What the defendant is saying in the above quoted portion of his Objections, as the Magistrate understands it, is that an Administrative Law Judge, based on the knowledge and expertise developed by him in hearing numerous cases, should be able to rely on that knowledge (which is reposed only in the Administrative Law Judge's mind and which is thus known only to him) in making decisions in Social Security cases. To merely state the defendant's position is to expose its erroneousness. Simply stated, if the Administrative Law Judge was allowed to rely on his own knowledge and expertise in deciding that a claimant had the ability to perform light or sedentary work, the court would effectively be denied its statutory right to review the Secretary's decision since, in brief, there is no way the court can review conclusions based on knowledge and information reposed solely within the hidden recesses of an Administrative Law Judge's mind.

In his Report and Recommendation the Magistrate also recommended that this case be remanded to the Secretary because the Administrative Law Judge failed to make a specific finding on the issue of plaintiff's pain. Defendant objects to this recommendation on the bases (1) that the "administrative law judge discussed plaintiff's complaints of pain thoroughly (Tr. 12)" and (2) that the Administrative Law Judge im-

pliedly rejected plaintiff's complaints of pain.

The Magistrate does not agree that the Administrative Law Judge thoroughly discussed plaintiff's complaints of pain. Thus, the only pain discussed by the Administrative Law Judge (Tr. 12) was plaintiff's complaint of knee pain. The record reflects, however, that plaintiff complained of severe pain in her back and shoulder. At no time, however, did the Administrative Law Judge accept or reject these complaints of pain.

Further, if defendant objects to the Magistrate's conclusion that a specific finding on the issue of pain is required to be made, he should really direct his objection to the Ninth Circuit, and not this Court, since it is the former court which has imposed the requirement that a specific finding be made on the issue of pain. Thus, in *Mark v. Celebrezze*, 348 F.2d 289, 292 (9th Cir. 1965) the court stated:

> ". . . On the contrary, it may be necessary, in ascertaining whether statutorily-defined 'disability' exists in a given case, to determine the truthfulness of allegations of subjective pain; and it is of course the duty of the trier of fact to weigh the evidence and *find* upon this difficult issue. . . ." (Emphasis added.)

IT IS RECOMMENDED that the District Judge deem the Report and Recommendation lodged May 12, 1978 as final, and that the Findings of Fact, Conclusions of Law and recommendations contained therein be adopted as those of the Court, and that an order be issued remanding the case to the Secretary of Health, Education and Welfare for the purposes set forth in the Magistrate's Report and Recommendation.

Dated: June 19, 1978

### ORDER ADOPTING REPORTS AS OPINIONS OF THE COURT

FERGUSON, District Judge.

The Report and Recommendation and the Final Report and Recommendation, both filed June 26, 1978, of Magistrate Harvey A. Schneider of this court are adopted as the opinions of the court.

IT IS FURTHER ORDERED that the clerk serve copies of this order by United States mail upon counsel for the parties appearing in this matter.